**James RODRIGUEZ and Yolanda Rodriguez, Petitioners,**

v.

**John W. SCHUTT, Respondent.**

**No. 95SC97.**

Supreme Court of Colorado, En Banc.

April 15, 1996.

---

Philip A. Klein and Charles Welton, P.C., Charles Welton, Philip A. Klein, Denver, for Petitioners.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Englewood, for Respondent.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, for Amicus Curiae The Colorado Trial Lawyers' Association.

Justice ERICKSON delivered the Opinion of the Court.

James Rodriguez was injured by broken glass on a storm door on the premises which he and his wife, Yolanda, rented from John W. Schutt. The Rodriguezes sued Schutt for negligence. A jury found Schutt 70% negligent and James Rodriguez 30% negligent. The jury awarded judgments to James Rodriguez for $275,000 and to Yolanda Rodriguez for $25,000. The court reduced these judgments to $192,000 and $17,500, respectively, due to James Rodriguez' comparative negligence. The trial court calculated interest at the nine-percent annual interest rate prescribed by section 13–21–101, 6A C.R.S. (1987). Schutt appealed. The Rodriguezes cross-appealed, challenging the operation of section 13–21–101 on statutory and constitutional grounds. The court of appeals affirmed the judgments and held that: (1) section 13–21–101 did not establish a floor on the rate at which interest accrues on a personal injury money judgment; and (2) section 13–21–101 did not violate equal protec-

tion.[1] The court of appeals remanded the case to the district court for recalculation of interest at the then-lower, market-determined interest rate pursuant to section 13–21–101. *Rodriguez v. Schutt,* 896 P.2d 881, 887 (Colo.App.1994).

The Rodriguezes petitioned this court for certiorari, and we granted certiorari on the following issues:

1. Should § 13–21–101, 6A C.R.S. (1987), be interpreted to establish a floor on interest on judgments at nine percent (9%) when the personal injury judgment creditor has been subjected to an appeal?

2. Alternatively, is an appeal-reduced interest rate pursuant to § 13–21–101, 6A C.R.S. (1987), a constitutionally prohibited denial of equal protection to personal injury judgment creditors subjected to appeal?

We affirm the court of appeals holding that section 13–21–101 does not establish a floor on the interest rate applicable to personal injury money judgments. However, we reverse, in part, the court of appeals determination that section 13–21–101 does not violate equal protection. Accordingly, we affirm in part, reverse in part, and remand this case to the court of appeals with directions.

I

Section 13–21–101 provides:

(1) In all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent of such other person, corporation, association, or partnership and whether such injury has resulted fatally or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date said suit is filed; and, on and after July 1, 1979, it is lawful for the plaintiff in the complaint to claim interest on the damages claimed from the date the action accrued. When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such amount calculated at the rate of nine percent per annum on actions filed on or after July 1, 1975, and at the legal rate on actions filed prior to such date, and calculated from the date such suit was filed to the date of satisfying the judgment and to include the same in said judgment as a part thereof. On actions filed on or after July 1, 1979, the calculation shall include compounding of interest annually from the date such suit was filed. On and after January 1, 1983, if a judgment for money in an action brought to recover damages for personal injuries is appealed by the judgment debtor, interest, whether prejudgment or postjudgment, shall be calculated on such sum at the rate set forth in subsections (3) and (4) of this section from the date the action accrued and shall include compounding of interest annually from the date such suit was filed.

(2) (a) If a judgment for money in an action brought to recover damages for personal injuries is appealed by a judgment debtor and the judgment is affirmed, interest, as set out in subsections (3) and (4) of this section, shall be payable from the date the action accrued until satisfaction of the judgment.

(b) If a judgment for money in an action to recover damages for personal injuries is appealed by a judgment debtor and the judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, interest, as set out in subsections (3) and (4) of this section, shall be payable from the date the action accrued until the judgment is satisfied. This interest shall be payable on the amount of the final judgment.

(3) The rate of interest shall be certified each January 1 by the secretary of state to be two percentage points above the discount rate, which discount rate shall be the rate of interest a commercial bank pays to the federal reserve bank of Kansas City using a government bond or other eligible

---

1. The court of appeals also resolved other issues which are not relevant here.

paper as security, and shall be rounded to the nearest full percent.....

(4) The rate at which interest shall accrue during each year shall be the rate which the secretary of state has certified as the annual interest rate under subsection (3) of this section.

## II

■ The right to interest on personal injury money judgments in Colorado is derived from section 13–21–101 and is in derogation of the common law. *See, e.g., Clark v. Hicks,* 127 Colo. 25, 31–32, 252 P.2d 1067, 1070 (1953) (applying earlier version of the interest statute). Thus, we must strictly construe section 13–21–101, *id.* at 32, 252 P.2d at 1070, while bearing in mind that our primary goal is to give effect to the intent of the General Assembly. *See Thurman v. Tafoya,* 895 P.2d 1050, 1055 (Colo.1995). To do so, we must read and consider the statute "as a whole in order to give consistent, harmonious, and sensible effect to all of its parts." *Id.; see* § 2–4–201(c), 1B C.R.S. (1980). We will give effect to the plain meaning of the statute's words and phrases, unless the result is absurd or unconstitutional. *Snyder Oil Co. v. Embree,* 862 P.2d 259, 262 (Colo.1993).

■ If we determine that section 13–21–101 is ambiguous, we may look to rules of statutory construction and to the legislative history as indicative of the legislature's intent. *See Thurman,* 895 P.2d at 1055. However, if we determine that the statute is unambiguous, "we need not resort to interpretative rules of statutory construction" to determine the statute's meaning. *Snyder Oil,* 862 P.2d at 262. If we can "give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said." *Resolution*

*Trust Corp. v. Heiserman,* 898 P.2d 1049, 1054 (Colo.1995).

## III

Before 1982, section 13–21–101 required that the court calculate all interest on personal injury money judgments at an annual rate of nine percent. *See* § 13–21–101, 6 C.R.S. (1973 & 1981 Supp.). In 1982, the General Assembly amended the statute to require the court to recalculate interest on personal injury money judgments at a market-determined interest rate when the judgment debtor appeals and the appellate court affirms the judgment in whole or in part. Act of March 25, 1982, ch. 39, 1982 Colo. Laws 227. The 1982 amendment did not change the nine-percent statutory rate on judgments which the judgment debtor does not appeal. *Id.*

The Rodriguezes contend that section 13–21–101 establishes a floor of nine percent on the interest rate applicable to personal injury money judgments. However, the plain language of the statute does not support this argument. *Cf.* §§ 5–12–102(4)(b), –106(2), 2 C.R.S. (1992) (establishing a floor of an annual rate of eight-percent interest for appealed, civil money judgments which are not personal injury judgments).

■ Rather, we conclude that the plain language of section 13–21–101, as amended, requires a nine-percent interest rate for personal injury money judgments which the judgment debtor does not appeal and a market-determined interest rate for both prejudgment and postjudgment interest on personal injury money judgments which the judgment debtor does appeal.[2] *See Ackerman v. Power Equip. Co.,* 881 P.2d 451, 452–53 (Colo.App.1994); John C. Tredennick, Jr. & Gregory B. Cairns, *Collecting Pre- and Post–Judgment Interest in Colorado: A Primer,* 15 Colo. Law. 753, 758 (1986).[3]

---

**2.** We have held that section 13–21–101 was ambiguous as to whether it authorized prejudgment interest on punitive damages. *See Seaward Const. Co. v. Bradley,* 817 P.2d 971, 975 (Colo. 1991). However, the ambiguity of a statute in one respect does not necessitate a conclusion of ambiguity in every other respect.

**3.** The Rodriguezes also contend that the statute, as written, requires a double award of prejudgment interest because the phrase "such sum" in the last sentence of subsection (1) refers back to "judgment," which, at that point, includes the nine-percent interest added by the previous sentence. *See* § 13–21–101(1). Thus, the Rodriguezes argue, the plain language of the statute

However, the lack of ambiguity in section 13–21–101 does not ensure its constitutionality. Thus, we examine the Rodriguezes' argument that the statute violates equal protection.

## IV

■ The Rodriguezes argue that, as applied, the alternative interest rates established by section 13–21–101 violate their right to equal protection of the laws. *See* U.S. Const. amend. XIV; Colo. Const. art. II, § 25; *Millis v. Board of County Comm'rs*, 626 P.2d 652, 657 (Colo.1981) (holding that the due process clause contained in the Colorado Constitution encompasses a guarantee of equal protection). The threshold question we must ask is "whether the legislation results in dissimilar treatment of similarly situated individuals." *Duran v. Industrial Claim Appeals Office*, 883 P.2d 477, 481 (Colo.1994).

■ The receipt of interest on judgment is not a fundamental right, *see Clark*, 127 Colo. at 31–32, 252 P.2d at 1070, nor does section 13–21–101 affect or create a suspect or quasi-suspect class. *See Higgs v. Western Landscaping & Sprinkler Sys., Inc.*, 804 P.2d 161, 164 (Colo.1991). Therefore, any disparity in treatment of similarly situated individuals under section 13–21–101 must have a "rational basis." *Duran*, 883 P.2d at 482; *Willer v. City of Thornton*, 817 P.2d 514, 519 (Colo. 1991).

■ Under the rational basis standard, we presume that section 13–21–101 is constitutional, *see Duran*, 883 P.2d at 482, and place the burden upon the Rodriguezes to prove, beyond a reasonable doubt, that the statutory classification: (1) has no rational basis in fact; or (2) is not rationally related to a legitimate governmental purpose. *See id.; Higgs*, 804 P.2d at 164. A statutory classification is rationally based in fact if the classification is "based on differences that are real and not illusory." *Higgs*, 804 P.2d at 164.

would require the judgment debtor who appeals to pay nine-percent prejudgment interest on the judgment itself *and* market-determined interest on the judgment amount plus nine-percent inter-

The appropriate analysis of the Rodriguezes' equal protection challenge to section 13–21–101 turns on the classifications which the statute creates. Section 13–21–101 establishes differential interest rates for two separate categories of interest: prejudgment and postjudgment. Within each category, the statute differentiates between judgments which are appealed and those which are not. In effect, the statute creates two classes of personal injury money judgment creditors: those whose judgment debtors appeal the judgment and those whose judgment debtors do not appeal. Likewise, the statute creates two classes of personal injury money judgment debtors: those who appeal and those who do not appeal.

The plain language of section 13–21–101 dictates that judgment creditors whose judgment debtors do not appeal are entitled to prejudgment interest at a rate of nine percent, while judgment creditors whose judgment debtors *do* appeal are entitled to prejudgment interest at a market-determined rate. As a necessary corollary, judgment debtors who do not appeal must pay prejudgment interest at a rate of nine percent, while judgment debtors who do appeal pay prejudgment interest at a market-determined rate.

The plain language of section 13–21–101 makes a similar distinction with regard to postjudgment interest. Judgment creditors whose judgment debtors do not appeal are entitled to postjudgment interest at a rate of nine percent, while judgment creditors whose judgment debtors do appeal are entitled to postjudgment interest at a market-determined rate. Again, as a necessary corollary, judgment debtors who do not appeal pay postjudgment interest at a rate of nine percent, while judgment debtors who do appeal pay postjudgment interest at a market-determined rate.

We analyze separately the statute's treatment of the two categories of interest, prejudgment and postjudgment, as that treatment affects the two classes of judgment

est. We did not grant the Rodriguezes certiorari review of this issue, *see supra* at 924, and our holding in part V of this opinion eliminates the need for its resolution.

debtors and the two classes of judgment creditors.[4]

## A

When the trial court awards prejudgment interest, both classes of judgment creditors are similarly situated, and both classes of judgment debtors are similarly situated. That is, both the judgment creditor whose judgment debtor later appeals and the judgment creditor whose judgment debtor does not appeal have a personal injury money judgment in hand. Likewise, at that point in time, the judgment debtors have not yet "classified" themselves by opting to appeal or not to appeal.

However, the statute requires the court to recalculate the prejudgment interest owing to the class of judgment creditors whose judgment debtors appeal and, necessarily, to recalculate the interest owed by that group of judgment debtors.[5] When the market-determined interest rate is lower than nine percent, the plain language of the statute creates an anomalous result: after recalculation of interest, the judgment debtor who appeals owes the judgment creditor less prejudgment interest than the judgment debtor who does not appeal, even if the appellate court affirms the judgment in its entirety. Similarly, when the market-determined interest rate is higher than nine percent, the judgment debtor who appeals is effectively penalized by being charged a higher rate of prejudgment interest.

We conclude that, at the time prejudgment interest is awarded, the statutory distinction between classes of judgment creditors and judgment debtors depends upon whether the judgment debtors *later* appeal, has no rational basis in fact, and cannot be sustained. At the time prejudgment interest is awarded, the groups are in exactly the same situation. The statute's *ex post facto* classification of the groups according to their later conduct distinguishes between the groups based upon an arbitrary and illusory difference and, therefore, violates the guarantee of equal protection of the laws. Because the statutory distinction has no rational basis in fact, we need not analyze whether the distinction is rationally related to a legitimate governmental purpose to conclude that it is unconstitutional. *See Higgs,* 804 P.2d at 165.

We note that the recalculation of prejudgment interest requires the court to re-open the judgment and recalculate the amount due. This recalculation of an amount which the trial court has determined to be owing, even where the judgment is affirmed in its entirety, does violence to the finality of the judgment and should not be tolerated.

## B

The statute's treatment of postjudgment interest does not suffer from the same deficiency. Section 13–21–101 treats postjudgment interest in a like manner to prejudgment interest: judgments which the judgment debtor appeals accrue postjudgment interest at the market-determined rate, while judgments which the judgment debtor does not appeal accrue postjudgment interest at the rate of nine percent. However, at this point, a rational basis in fact distinguishes the classes: their entry or non-entry into the appellate process.

In the usual case, C.A.R. 4 requires that a party seeking appellate review of a final judgment file a notice of appeal with the appellate court within forty-five days of the entry of judgment. We recognize that C.A.R. 4, in combination with the postjudgment interest provisions of section 13–21–101, creates a window of forty-five days within which the parties' later conduct may

---

4. We have previously determined that "prejudgment interest [under section 13–21–101] is a form of damages," *see Allstate Ins. Co. v. Starke,* 797 P.2d 14, 20 (Colo.1990), and have recognized that prejudgment interest differs substantively from postjudgment interest. *Id.* at 21. Thus, it is appropriate to consider the two categories of interest separately, although "a single rate of interest [applies] to the entire period from

accrual of the action until payment of the judgment." *See id.*

5. Under the statute, the only time when the interest rate is uniform, regardless of appeal, and when no recalculation of interest is necessary is when the interest rate certified by the secretary of state is nine percent for all relevant years. *See* § 13–21–101(1), (3).

affect the rate at which postjudgment interest accrues. That is, a judgment debtor may file a notice of appeal on the forty-fifth day after the entry of final judgment. At that point, the rate at which postjudgment interest accrues becomes the market-determined rate, rather than the rate of nine percent. Thus, the judgment debtor's decision to appeal will retroactively affect the rate of postjudgment interest during the forty-five days immediately following the original judgment. However, we also recognize that:

> [a] statute will not be found unconstitutional under the rational basis test because the distinctions created by the legislature are not made with mathematical nicety. Rather, the problems of government being practical ones, equal protection will tolerate a rough accommodation of variant interests. So long as the distinction drawn by the General Assembly is rationally related to some governmental interest, the Equal Protection Clause is not offended simply because the line which is drawn is imperfect.

*Duran*, 883 P.2d at 483 (citations and internal quotation marks omitted).

We thus examine whether the distinction which section 13–21–101 draws with regard to postjudgment interest is rationally related to a legitimate governmental purpose. *See id.* at 484. We have little difficulty concluding that the statutory classification has some reasonable relationship to a legitimate governmental purpose.

In determining the purpose of section 13–21–101, it is appropriate to look to legislative history as indicative of the intent of the General Assembly. *See, e.g., Willer*, 817 P.2d at 519–20. The 1982 amendment to section 13–21–101 created the distinction between judgments which the judgment debtor appeals and those which the judgment debtor does not appeal. The General Assembly intended that the amendment, and its market-determined interest rate, apply only to judgments which the judgment debtor appeals. *See* Act of March 25, 1982, ch. 39, 1982 Colo. Laws 227 (entitled "An Act Concerning Interest Payable on *Appealed* Money Judgments in Civil Actions" (emphasis added)); *see City of Ouray v. Olin*, 761 P.2d 784, 789

(Colo.1988) (holding that the title of legislation is relevant to legislative intent).

The statements of the bill's sponsors also indicate an intent to neutralize the economic benefits and detriments of appeal under the statutorily-set rate of interest. Senator Ralph Cole introduced the bill to the Senate and stated:

> This addresses a problem we have today in Colorado where it is to the advantage of a person who has lost a case in trial court to appeal rather than pay the judgment because the standard rate of interest which accrues on a judgment is so much less than what the judgment debtor can earn if he keeps the money.

Hearings on S.B. 140 Before the Senate Comm. on the Judiciary, 53d General Assembly, 2d Sess. 2 (1982). Representative Ronald H. Strahle introduced the bill to the House Committee with the caveat that:

> [a]s to judgments which are not appealed in this bill they would draw interest at the set legal rate on the theory that this bill is not designed to raise rates on judgments generally where people pay them promptly, but rather to reach the problem of the person or the agency which appeals simply to make money, notwithstanding the fact the appeal may not be a good one.

Hearings on S.B. 140 Before the House Comm. on the Judiciary, 53d General Assembly, 2d Sess. 4–5 (1982). Representative David Skaggs stated that the Bill proposed a "neutrality" which "split[s] the difference between what the [insurance] company might earn on its investments and what the injured party might earn if they had the money earlier along." *Id.* at 23–24. Representative Skaggs went on to state:

> I would really like to strongly urge that we get away from talking in terms of penalty, which is not what is involved in the bill at all. All we're doing is trying to hit an interest rate that approximates the market, and it's neither a penalty or an incentive. .... [W]e're not trying to penalize anybody. We're merely trying to impose a fair return on the use of money that is

determined to have belonged to someone else.

*Id.* at 26.

We may infer the following purposes, among others, from the title of the amendment, its legislative history, and its plain language: to eliminate the financial incentive (or disincentive) to appeal and to ensure that the judgment creditor whose satisfaction is delayed due to an unsuccessful appeal receives the time value of his or her money judgment. We hold that these legislative purposes are reasonable and within the General Assembly's authority. We also conclude that the General Assembly's imposition of a market-determined rate of postjudgment interest is rationally related to these purposes. Accordingly, section 13–21–101, as applied to postjudgment interest, does not violate equal protection.

## V

■ We may sever and strike any portion of a statute which we hold to be unconstitutional, *see* § 2–4–204, 1B C.R.S. (1986), and may limit the portion stricken to single words or phrases where appropriate. *See Shroyer v. Sokol,* 191 Colo. 32, 35, 550 P.2d 309, 311 (1976). The intent of the General Assembly aids our determination of the propriety of severing statutory language. *Colorado Project–Common Cause v. Anderson,* 177 Colo. 402, 404, 495 P.2d 218, 219 (1972).

■ As discussed above, the prejudgment interest provisions of section 13–21–101 violate equal protection in that those provisions create an arbitrary distinction between classes of judgment creditors and of judgment debtors without a rational basis in fact. Accordingly, we conclude that the last sentence of section 13–21–101(1) must be read and applied as follows:

On and after January 1, 1983, if a judgment for money in an action brought to recover damages for personal injuries is appealed by the judgment debtor, POST-JUDGMENT interest, ~~whether prejudgment or postjudgment,~~ shall be calculated on such sum at the rate set forth in subsections (3) and (4) of this section from the date the action accrued and shall include compounding of interest annually from the date such suit was filed.

Thus, prejudgment interest on *all* personal injury money judgments will accrue at nine percent. Postjudgment interest on personal injury money judgments which the judgment debtor appeals will accrue at the market-determined rate, while postjudgment interest on personal injury money judgments which the judgment debtor does not appeal will accrue at nine percent. Our severance of the market-determined prejudgment interest rate for judgments which the judgment debtor appeals not only alleviates the constitutional concerns, but effectuates the legislature's intent in amending the statute.

We recognize that, during the period between judgment and satisfaction, interest on judgments which the judgment debtor does not appeal will likely accrue at a different rate than interest on judgments which the judgment debtor does appeal. *See supra* note 5. We also recognize that the date at which a judgment is satisfied is not fixed, but depends on a number of factors, including a potential appeal. That is, a judgment creditor whose judgment debtor does not appeal may obtain a writ of execution and begin collection proceedings once he or she receives a final judgment pursuant to C.R.C.P. 58 and all stays have expired. *See* C.R.C.P. 62, 69. By contrast, a judgment creditor whose judgment debtor appeals must generally await judgment on appeal before obtaining a writ of execution. *See* C.R.C.P. 62(d). Again, however, we recognize that the line drawn by a statute need not be perfect nor "made with mathematical nicety" so long as the distinction has a rational basis in fact and is rationally related to some governmental interest. *See Duran,* 883 P.2d at 482–83 (citation and internal quotation marks omitted). As discussed above, the General Assembly, in enacting the 1982 amendment, rationally distinguished between appealed and non-appealed personal injury money judgments, and that distinction, as it relates to postjudgment interest, is rationally based in fact.

## VI

We affirm the court of appeals holding that section 13–21–101 does not establish a floor

for the interest rate at which interest on personal injury money judgments accrues. We conclude, however, that the provision in section 13–21–101 relating to prejudgment interest on personal injury money judgments which the judgment debtor appeals violates equal protection. Accordingly, we reverse the court of appeals decision that the market-determined interest rate applies to both prejudgment and postjudgment interest on a judgment which the judgment debtor unsuccessfully appeals. Pursuant to section 2–4–204, we strike the unconstitutional portion of section 13–21–101, as set forth above. Finally, we return this case to the court of appeals with directions to remand this case to the district court for a recalculation of interest in accordance with this opinion.

SCOTT, J., dissents.

Justice SCOTT dissenting:

A nine percent interest rate on nonappealed judgments and a market-determined rate on appealed judgments introduces a variable against which defendant debtors can measure the profitability of appeal. I agree with the majority that this distinction contravenes the General Assembly's attempt to encourage the prompt payment of judgments and to discourage non-meritorious appeals. *See* maj. op. at 929. I also agree with the majority that this distinction violates equal protection. *Id.* at 927. Nonetheless, a distinction between prejudgment interest at nine percent and postjudgment interest at the market rate violates equal protection because, without a rational basis in fact, nonappealed judgment creditors and appealed judgment creditors will receive different rates of interest while they await satisfaction of judgment. Such disparate treatment equal protection was intended to prohibit.

In contrast, allowing the market to determine the interest rate on both appealed and nonappealed judgments furthers the legislative purpose of compensating personal injury victims for the lost time value of their awards and encourages the prompt payment of judg-

ments by eliminating the profitability of appeal. Furthermore, a single market rate of interest eliminates arbitrary distinctions between judgment creditors subject to appeal and judgment creditors who are not.

## I

### A

Article II, section 25, of the Colorado Constitution and the Fourteenth Amendment of the United States Constitution guarantee the right to equal protection of the laws and assures that persons similarly situated will receive like treatment.[1] *Estate of Stevenson v. Hollywood Bar,* 832 P.2d 718, 723 (Colo. 1992); *see City of Montrose v. Public Util. Comm'n,* 732 P.2d 1181, 1189 (Colo.1987).

The parties do not dispute the appropriate standard which governs our constitutional analysis. Because the interest statute does not involve a fundamental right nor a suspect classification, review is limited to a determination of whether the challenged legislation is rationally related to a legitimate state interest. *See Duran v. Industrial Claim Appeals Office,* 883 P.2d 477, 482 (Colo.1994). Under that standard, a classification is presumed constitutional and does not violate equal protection unless it is proven, beyond a reasonable doubt, that the classification has no rational basis or is not rationally related to a legitimate governmental purpose. *Id.* I consider the two prongs of the rational basis test in turn, considering first whether there is "a rational basis in fact for the statutory classification." *Duran,* 883 P.2d at 482.

The majority's construction of the interest statute, with an interest rate distinction between prejudgment interest at nine percent and postjudgment interest at the market rate, violates the first prong of the rational basis test because nonappealed judgment creditors and appealed judgment creditors will receive different rates of interest, and thus are treated differently, while they await satisfaction without a rational basis for the disparate result. A single market-deter-

---

**1.** The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. We have long recognized that article II, § 25 of the Colorado Constitution provides the same protection. *Lujan v. Colorado State Bd. of Educ.,* 649 P.2d 1005 (Colo.1982); *People v. Max,* 70 Colo. 100, 198 P. 150 (1921).

mined rate of interest, regardless of appeal or the entry of judgment, eliminates the equal protection violation. Diagram A maps the different interest rates resulting from the majority opinion and a single market-determined rate, which avoids constitutional challenge.

DIAGRAM A

*Equal protection violation is shaded.

B

I now turn to the second inquiry in a rational basis examination: whether the statutory classification bears a reasonable relationship to a legitimate government interest. *Duran,* 883 P.2d at 484; *Western Metal v. Acoustical and Const.,* 851 P.2d 875, 881 (Colo.1993).

The General Assembly enacted the amendments to section 13–21–101 to discourage non-meritorious appeals and to encourage the prompt payment of judgments. However, a prejudgment-postjudgment distinction creates disparate treatment and thwarts the prompt payment of judgments. Recognizing that the prejudgment-postjudgment distinction violates the rational basis test, the majority writes:

> In the usual case, C.A.R. 4 requires that a party seeking appellate review of a final judgment file a notice of appeal with the appellate court within forty-five days of the entry of judgment. We recognize that C.A.R. 4, in combination with the postjudgment interest provisions of section 13–21–101, creates a window of forty-five days within which the parties' later conduct may affect the rate at which postjudgment interest accrues. That is, a judgment debtor may file a notice of appeal on the forty-fifth day after the entry of final judgment. At that point, the rate at which postjudgment interest accrues becomes the market-determined rate, rather than the rate of nine percent. Thus, the judgment debtor's decision to appeal will retroactive-

ly affect the rate of postjudgment interest during the forty-five days immediately following the original judgment.

Maj. op. at 927–928. Rather than offer a reasonable relationship between the disparate treatment during the window and a legitimate government purpose, which the second prong of the rational basis test demands, the majority simply states that equal protection does not require the General Assembly to exact mathematical nicety. *See* maj. op. at 928. This response is woefully inadequate. However, it is unavoidable because the disparate treatment lacks any justification. Furthermore, the prejudgment-postjudgment distinction eliminates the judgment debtor's incentive to satisfy judgment or expedite the appeal process.

C

Statutes should be construed in a manner that avoids constitutional infirmities. *People v. Zapotocky,* 869 P.2d 1234, 1240 (Colo. 1994); *Committee for Better Health Care v. Meyer,* 830 P.2d 884, 894 (Colo.1992); *Renteria v. State Dept. of Personnel,* 811 P.2d 797, 799 (Colo.1991); Norman J. Singer, *Statutes and Statutory Construction* § 45.11 at pp. 48–49 (1992 rev.) (stating the courts are to construe legislative enactments in a way that avoids constitutional difficulties to the greatest extent possible). Thus, if a statute is capable of alternative constructions, only one

of which is constitutional, then the constitutional interpretation must be adopted. *People v. McBurney*, 750 P.2d 916, 920 (Colo. 1988).

A prejudgment-postjudgment distinction effects an unconstitutional distinction between nonappealed and appealed judgement creditors who await satisfaction. Therefore, I reject this alternative. Applying a market-determined rate of interest on both appealed and nonappealed judgments completely neutralizes the financial incentive to appeal; therefore, it is rationally related to the legitimate governmental interest to discourage meritless appeals and encourage the timely payment of judgments. Furthermore, a single rate of interest completely eliminates arbitrary and disparate categories of judgment creditors and debtors.

## II

Accordingly, I would find that the market rate of interest as determined by the secretary of state should apply to both appealed and nonappealed judgments. As a consequence, I would reverse the court of appeals and remand with instructions that it return the case to the trial court with directions to recalculate interest applying the market rate of interest as certified by the secretary of state. Therefore, I respectfully dissent.