2013 COA 10

**Holly AVERYT, Plaintiff–Appellee.**

**v.**

**WAL–MART STORES, INC.,
Defendant–Appellant.**

**No. 12CA0644.**

Colorado Court of Appeals,
Div. II.

Jan. 17, 2013.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2012.

Perkins Coie LLP, Robert N. Miller, Stephanie E. Dunn, Zane A. Gilmer, Denver, Colorado; The Gold Law Firm, LLC, Gregory A. Gold, Greenwood Village, Colorado; Jeffrey R. Hill, P.C., Jeffrey R. Hill, Colorado Springs, Colorado, for Plaintiff–Appellee.

Greenberg Traurig LLP, David G. Palmer, Brian L. Duffy, Denver, Colorado; Harris, Karstaedt, Jamison & Powers, P.C., Jamey W. Jamison, Rita L. Booker, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

¶ 1 As a general rule, if a plaintiff obtains a money judgment in a personal injury tort case, section 13–21–101(1), C.R.S.2012, requires the trial court to add post judgment interest to the amount of damages that the jury has awarded. Such interest shall be calculated at the rate of nine percent per annum, and it shall be compounded annually.

¶ 2 The statute contains an exception. If the judgment debtor—normally the defendant—appeals the money judgment, then the

court shall calculate post judgment interest at a market-determined rate. § 13–21–101(1), (3), (4), C.R.S.2012.

¶ 3 This appeal raises the question whether the exception applies when the judgment *creditor*—here, the plaintiff—appeals after (1) a jury has awarded the plaintiff money damages; (2) the trial court enters judgment in the plaintiff's favor; (3) the judgment debtor—here the defendant—files a motion for a new trial; and (4) the trial court grants the defendant's motion for a new trial and vacates the judgment. The applicability of the exception is quite meaningful in this case because the post judgment interest rate established by the general rule—nine per cent per annum—is much higher than the market-determined rate established by the exception for 2012—three per cent per annum.

¶ 4 We conclude that the exception does not apply in this case because the language creating the exception in section 13–21–101 only refers to judgment debtors, not to judgment creditors. As a result, we affirm the judgment in favor of the plaintiff and judgment creditor, Holly Averyt (the driver), against the defendant and judgment debtor, Wal–Mart Stores, Inc. (the store).

## I. Background

¶ 5 The driver drove a commercial truck. She slipped and fell on grease-coated ice on a loading dock when she was making a delivery to the store, which is located in Greeley. The fall ruptured a disc in her spine and injured her shoulder and neck. These injuries prevented her from doing her job, and left her unable to control her bladder or bowel.

¶ 6 The driver sued the store for negligence and premises liability. During discovery and in its opening statements at trial, the store denied that grease had been spilled where the driver fell. On the first day of trial, the driver's attorney received an e-mail from a colleague containing a memorandum prepared by the City of Greeley. This memorandum confirmed that the store knew that there had been a grease spill and had hired a crew to clean it up. The next day, the driver's attorney used the city's report to impeach the store's corporate representative,

who had previously denied that there had been a grease spill.

¶ 7 After reviewing the memorandum, the store told the court that it had located a witness who remembered the grease spill and had made the arrangements with the company to clean it up. From that point on, the store admitted that there had been a grease spill on the delivery dock, and the store instead asserted that it exercised reasonable care in cleaning up the spill.

¶ 8 The jury returned a verdict in the driver's favor, which included a finding that the driver's total damages were $15 million. In December 2010, the trial court entered judgment, and it reduced the amount of damages to $9,866,250 to reflect the statutory cap on noneconomic damages.

¶ 9 Shortly after the trial court entered this judgment, the store moved for a new trial. It argued that the introduction of the evidence, found in the city's report, that there had been a grease spill had unfairly prejudiced the jury. The trial court granted this motion, vacated the judgment, and ordered a new trial.

¶ 10 The driver then sought relief in the supreme court under C.A.R. 21. After issuing a rule to show cause, the supreme court held that, because the city's report was a publicly available document, it was not subject to the disclosure requirements in the Colorado Rules of Civil Procedure. The supreme court made the rule absolute, and reversed the trial court's order granting the store a new trial. *Averyt v. Wal–Mart Stores, Inc.*, 265 P.3d 456, 461 (Colo.2011).

¶ 11 In February 2012, the trial court entered judgment for the driver in the amount of $9,866,250, prejudgment interest in the amount of $2,794,788.47, and her costs of roughly $45,000. In that order, the trial court also awarded post judgment interest at "the statutory rate of 9%, which shall accrue from December 1, 2010 [the date the trial court first entered judgment], compounded annually, until the judgment is satisfied."

¶ 12 The store appealed, and it now raises two issues. First, it alleges that the jury's findings concerning the driver's premises lia-

bility claim is not supported by sufficient evidence. We disagree with this assertion.

¶ 13 Second, the store contends that the trial court erred when it awarded the driver post judgment interest at a rate of nine percent. The store argues that a variable, market-based rate—which is currently three percent—should apply instead. We are not persuaded by this argument.

¶ 14 Finally, the driver requests attorney fees on appeal. We decline this request.

## II. Sufficient Evidence Supports the Driver's Premises Liability Claim

### A. Standard of Review

¶ 15 The store asserts that the driver did not establish that the store's cleanup efforts fell below the standard of reasonable care required by the Colorado Premises Liability Act, section 13–21–115(3), C.R.S.2012. We recognize that the store now argues that the trial court applied a wrong legal standard, and, thus, it contends that this issue is subject to de novo review.

¶ 16 However, the store's argument on appeal focuses on the evidence, or lack of evidence, in the record, not on any legal standard. Therefore, we view this argument as a challenge to the sufficiency of the evidence supporting the jury's verdict.

¶ 17 The driver asserts that the store has waived this argument because it failed to make a motion for directed verdict and failed to include this challenge in its post-trial motions. Assuming, for the purposes of argument, that this issue was preserved, we disagree with the store's position.

¶ 18 "When sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the verdict." *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1106 (Colo.App.2004). We must also "draw every reasonable inference from the evidence in favor of [the winning] party." *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1201 (Colo.App.2009).

### B. Analysis

¶ 19 The Colorado Premises Liability Act requires proof that "(1) the landowner [ ] actually knew or should have known[ ] of the danger to the invitee and (2) the landowner [ ] unreasonably failed to exercise reasonable care[ ] to protect the invitee from that danger." *Lombard v. Colo. Outdoor Educ. Center, Inc.*, 187 P.3d 565, 570 (Colo.2008).

¶ 20 Here, the following facts support the jury's finding that the store did not exercise reasonable care:

• The report from the City of Greeley showed that the store manager had known that "the problem had been going on for about a week" prior to the driver's fall.

• A second commercial driver testified that he had, three days before the driver fell, notified one of the store's employees about the grease spill. The second driver also testified that he almost slipped on the grease spill, and that there were no warnings or barricades.

• Although the store hired a cleanup crew before the driver fell, and, on the day before the driver fell, the crew performed some remediation, such as taking action to prevent the grease spill from spreading and shoveling some of it up with heavy machinery, the crew did not pressure-wash the delivery docks to remove all the grease until four days after the driver fell.

• The store did not present any evidence that it warned invitees or delivery drivers about the grease spill.

¶ 21 We must view these facts as a whole and in the light most favorable to the driver. *Parr,* 107 P.3d at 1106. From that perspective, we conclude that these facts are sufficient to support the verdict because they established that the store knew, or should have known, that the grease spill existed; it knew, or should have known, that the spill represented a danger to the safety of invitees, including the driver, who used the store's loading docks; and it unreasonably failed to exercise reasonable care to protect the driver from such danger. *See Lombard,* 187 P.3d at 570.

## III. Section 13–21–101(1) Does Not Apply to Appeals by Judgment Creditors

### A. Standard of Review

¶ 22 Statutory interpretation is a question of law that we review de novo. *Sperry v. Field*, 205 P.3d 365, 367 (Colo. 2009). "Because an interest statute is in derogation of the common law, the language of the statute must be strictly construed by the court." *Id.* (citing *Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo.1996)). But if the statute is "clear and unambiguous on its face, then the court need look no further." *Id.*

### B. Analysis

¶ 23 Here, the trial court determined that the store's obligation to pay post judgment interest began on December 1, 2010, the date when it first entered judgment. It then determined that it should award the driver post judgment interest at the fixed rate of nine percent, rather than, as the store argued, a variable market rate, which was three percent when the court first entered judgment. We disagree with the store's contention that the trial court erred when it took these steps.

¶ 24 In personal injury cases, such as this one, awards of pre- and post judgment interest are controlled by section 13–21–101(1).

> Before 1982, [this statute] required that the court calculate all interest on personal injury money judgments at an annual rate of nine percent. In 1982, the General Assembly amended the statute to require the court to recalculate interest on personal injury money judgments at a market-determined interest rate when the judgment debtor appeals and the appellate court affirms the judgment in whole or in part. The 1982 amendment did not change the nine-percent statutory rate on judgments when the judgment debtor does not appeal.

*Rodriguez*, 914 P.2d at 925 (citations omitted).

¶ 25 In *Rodriguez*, our supreme court concluded that this modification created two classes of judgment creditors—those whose judgment debtors appeal, and those whose judgment debtors do not—and two classes of judgment debtors—those who appeal, and those who do not. Under the statute, a judgment creditor was awarded pre- and post judgment interest at the prevailing market rate if the judgment debtor appealed. The judgment creditor was awarded pre- and post judgment interest at the rate of nine percent if the judgment debtor did not appeal. *Id.* at 926.

¶ 26 The creation of these classes created an equal protection problem as far as *pre*judgment interest was concerned. The court concluded that

> at the time prejudgment interest is awarded, the statutory distinction between classes of judgment creditors and judgment debtors depends on whether the judgment debtors *later* appeal, has no rational basis in fact, and cannot be sustained. At the time prejudgment interest is awarded, the groups are in exactly the same situation. The statute's *ex post facto* classification of the groups according to their later conduct distinguishes between the groups based upon an arbitrary and illusory difference and, therefore, violates the guarantee of equal protection of the laws.

*Id.* at 927 (emphasis in original).

¶ 27 As a result, the court held that section 13–21–101(1) must be read to require that "prejudgment interest on *all* personal injury money judgments will accrue at nine percent." *Id.* at 929 (emphasis in original).

¶ 28 However, the supreme court held that the creation of these classes did *not* create the same problem for post-judgment interest. Rather, the court concluded that the legislative purpose that drove the creation of these classes was to "eliminate the financial incentive (or disincentive) to appeal and to ensure that the judgment creditor whose satisfaction is delayed due to an unsuccessful appeal receives the time value of his or her money judgment." *Id.* at 929. These purposes were reasonable, and the legislature's decision to impose a market-determined rate of postjudgment interest on judgment debtors who appeal was rationally related to those legislative purposes. *Id.*

¶ 29 As a result, the court held that

> [p]ostjudgment interest on personal injury money judgments which the judgment

debtor appeals will accrue at the market-determined rate, while postjudgment interest on personal injury money judgments which the judgment debtor does not appeal will accrue at nine percent.

¶ 30 *Id.; see also Sperry*, 205 P.3d at 367 ("[In *Rodriguez v. Schutt* ] we held the distinction between judgments which are appealed and those which are not for purposes of post-judgment interest is permissible.").

¶ 31 The issue that the store raises on appeal concerning postjudgment interest is whether the trial court should have ordered the store to pay the nine percent rate or the market-determined rate. (In 2012, the market-determined rate was three percent. *See* Chief Justice Directive 85–22 (Feb. 7, 2012).) Its only argument concerning that issue is that the trial court should have treated the driver's C.A.R. 21 original proceeding after the trial court vacated the judgment—an appeal by the judgment creditor—like an appeal by a judgment debtor for the purposes of determining the proper rate of post-judgment interest.

¶ 32 The store does not contend on appeal that (1) the judgment in this case did not enter until the trial court reinstated the judgment after the supreme court issued its opinion, and, thus, the period consumed by the original proceeding should be subject to pre-judgment interest; (2) the market-determined rate should be imposed retroactively to the date of the original judgment because the store has now filed an appeal; or (3) the market-determined rate should at least be imposed prospectively from the time that the court reinstated the judgment because the store has now filed an appeal.

¶ 33 We disagree with the store's argument that, for purposes of section 13–21–101(1), an appeal by a judgment creditor should be treated like an appeal by a judgment debtor. Section 13–21–101(1) refers only to judgment debtors, not to judgment creditors. Thus, we apply the canon of statutory interpretation *expressio unius exclusio alterius*—"the inclusion of certain items implies the exclusion of others." *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo.2001). Doing so, we conclude that section 13–21–101(1) did not authorize the trial court to award post

judgment interest to the driver at the market-determined rate because the driver—the judgment creditor—appealed. *See Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005) ("We will not create an addition to a statute that the plain language does not suggest or demand."); *see also Indian Mountain Metro. Recreation & Park Dist. v. J.P. Campbell & Assocs.*, 921 P.2d 65, 66 (Colo.App.1996) (section 5–12–106, C.R.S.2012, which concerns post judgment interest on appealed judgments other than those covered by section 13–21–101, only refers to appeals taken by judgment debtors, and, thus, the section does not apply to appeals taken by judgment creditors); J. Kent Miller, *Recovery of Interest: Part I—Personal Injury*, 18 Colo. Law. 1063, 1065 (June 1989) ("Even where a plaintiff's verdict has been set aside by the trial court, the plaintiff appeals, and the appellate court reinstates the judgment, interest is not calculated under the market rate rules. It remains at 9 Percent because the appeal was not by the judgment debtor.").

¶ 34 The store argues that this interpretation of the statute creates the same equal protection problem that led the supreme court in *Rodriguez* to conclude that section 13–90–101(1) was unconstitutional as far as *pre*-judgment interest was concerned. We disagree for the following reasons.

¶ 35 First, the supreme court concluded that the *post*-judgment portion of section 13–90–101(1) did not offend the equal protection clause. That holding is binding on us here. *People v. Smith*, 183 P.3d 726, 729 (Colo.App. 2008) (court of appeals is bound by decisions of supreme court).

¶ 36 Second, the focus in *Rodriguez* was on two classes that were expressly created in section 13–21–101(1). The statute does not, as pertinent here, expressly create two classes—appeals by judgment debtors and appeals by judgment creditors—because it does not include appeals by judgment creditors.

¶ 37 Third, excluding appeals by judgment creditors from section 13–21–101(1) is consistent with the supreme court's reasoning in *Rodriguez*. There, the supreme court concluded, in the *pre*-judgment context, that the

creation of two classes would unfairly discourage some judgment debtors from appealing and unfairly encourage others to appeal. *Rodriguez*, 914 P.2d at 927. Judgment creditors, however, generally will not appeal from favorable judgments: their interest is in receiving their judgments as quickly as possible. *See Sperry*, 205 P.3d at 370 (the "overall purposes" of section 13–21–101(1) are to "eliminate any financial incentive or disincentive to appeal and to ensure that the judgment creditor receives the time value of his or her money judgment"). And where, as here, a judgment creditor appeals, it is because the trial court has granted a new trial *after* the judgment creditor obtained a favorable judgment, and the judgment creditor seeks to have that favorable judgment restored.

### IV. The Driver Is Not Entitled to Attorney Fees on Appeal

¶ 38 The driver asserts that she is entitled to attorney fees on appeal, because "it is clear that [the store's] purpose in raising this meritless issue [the sufficiency argument] for the first time on appeal is to hinder, harass, and delay justice for [the delivery driver]." We disagree.

¶ 39 If we "determine that an appeal is frivolous, [we] may award just damages and single or double costs to the appellee." C.A.R. 38(d). Attorney fees may also be awarded if an "attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or ... the action, or any part thereof, was interposed for delay or harassment." § 13–17–102(4), C.R.S. 2012; *see also Castillo v. Koppes–Conway,* 148 P.3d 289, 292 (Colo.App.2006).

■ ¶ 40 Appeals may be deemed frivolous in two ways. First, they may be frivolous *as filed,* where the "judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there is really no appealable is-

sue." *Castillo,* 148 P.3d at 292 (quoting *Dungaree Realty, Inc. v. United States,* 30 F.3d 122, 124 (Fed.Cir.1994)). Second, an appeal may be frivolous *as argued* where "the appellant commits misconduct in arguing the appeal." *Martin v. Essrig,* 277 P.3d 857, 862 (Colo.App.2011).

¶ 41 The driver claims that this appeal was frivolous as argued, but she does not point to specific instances of misconduct. She appears to assert, instead, that the store's appeal challenging the sufficiency of the evidence was frivolous as filed.

■ ¶ 42 Even though we have held above that sufficient evidence supported the jury's verdict, this argument was not so groundless to be frivolous as filed. "Because a lawyer may present a supportable argument which is extremely unlikely to prevail on appeal, it cannot be said that an unsuccessful appeal is necessarily frivolous." *Mission Denver Co. v. Pierson,* 674 P.2d 363, 365 (Colo.1984) (reversing the division's award of attorney fees that was based on an appellant's unsuccessful sufficiency challenge).

¶ 43 Essentially, an appeal is frivolous as filed "if the proponent can present no rational argument based on the evidence or law ... or the appeal is prosecuted for the sole purpose of harassment or delay." *Id.* at 366. Because there was some basis for the store's argument, we will not award appellate attorney fees even though the argument was unsuccessful.

¶ 44 The judgment is affirmed.

Judge CASEBOLT and Judge BOORAS concur.