The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 19, 2020

**2020COA164**

**No. 19CA1243, *Walker v. Ford Motor Co.* — Damages — Interest on Damages — Prejudgment Interest**

A division of the court of appeals considers how section 13-21-101, C.R.S. 2019, governing interest on personal injury money judgments, applies to a judgment won after the previous judgment in the same case had been overturned on appeal.  The division concludes that the plaintiff is entitled to the prejudgment interest rate set forth in section 13-21-101(1), on the amount of the new judgment, from the date the first judgment is entered to the date the second judgment is entered.

COLORADO COURT OF APPEALS                                    **2020COA164**

Court of Appeals No. 19CA1243
Boulder County District Court No. 11CV912
Honorable Nancy W. Salomone, Judge

Forrest Walker,

Plaintiff-Appellee,

v.

Ford Motor Company,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE GROVE
Dailey and Welling, JJ., concur

Announced November 19, 2020

Purvis Gray Thomson, LLP, John A. Purvis, Michael J. Thomson, Boulder,
Colorado; Chalat Hatten & Banker, PC, Evan P. Banker, Denver, Colorado, for
Plaintiff-Appellee

Wheeler Trigg O'Donnell, LLP, Edward C. Stewart, Theresa Wardon Benz,
Kristen L. Ferries, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Ford Motor Company, appeals the district court's award of prejudgment interest to plaintiff, Forrest Walker, during the period that followed the entry of an earlier judgment that was reversed on appeal. We hold that, notwithstanding Ford's successful prior appeal, the district court correctly awarded prejudgment interest to Walker from the date that his claim accrued through the date that it finally entered judgment in Walker's favor. We therefore affirm.

## I.     Background

¶ 2     Walker was injured when, on September 20, 2009, he was rear-ended while driving his 1998 Ford Explorer. Walker sued the other driver for negligence. And, asserting that the driver's seat in his vehicle was defective and contributed to his injuries, he also sued Ford. After Walker settled his claim against the other driver, he and Ford proceeded to trial. The jury returned a verdict of $2,915,971.20 in Walker's favor, but a division of this court reversed the judgment and remanded the case for a new trial. *Walker v. Ford Motor Co.*, 2015 COA 124. The supreme court affirmed the division's opinion on different grounds, *Walker v. Ford*

*Motor Co.*, 2017 CO 102, and this court issued the mandate on December 26, 2017.

¶ 3 The parties retried the case in February 2019. Walker prevailed again, and, on May 9, 2019 — nearly ten years after the crash — the district court entered judgment against Ford in the amount of $2,929,881.20. Walker requested that the court award him prejudgment interest at the statutory rate of nine percent for the entire ten years that had passed since his claim accrued. Ford objected. While Ford conceded that it owed prejudgment interest on the jury award up until the date that the first judgment was entered, it maintained that once it filed its first appeal interest should accrue at the (lower) postjudgment interest rate until the conclusion of the case. The district court agreed with Walker and ruled that "the statutory rate for pre-judgment interest applie[d] from the inception of the lawsuit." It therefore awarded him more than $3.6 million in interest.

## II. Analysis

¶ 4 Ford contends that the district court erred by awarding interest at the statutory prejudgment rate from the inception of the

2

case through the entry of judgment after the retrial in May 2019. We disagree.

## A. Standard of Review

¶ 5 The interpretation of section 13-21-101(1), C.R.S. 2019, is a question of law that we review de novo. *Morris v. Goodwin*, 185 P.3d 777, 779 (Colo. 2008). We begin with the plain language of the statute and, if it is clear and unambiguous on its face, we look no further. *See Francis ex rel. Goodridge v. Dahl*, 107 P.3d 1171, 1176 (Colo. App. 2005). Because an interest statute is in derogation of the common law, we strictly construe its language. *Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo. 1996).

## B. Analysis

¶ 6 Ford concedes that it owes interest on the judgment. However, relying on the last sentence of section 13-21-101(1), Ford contends that its first appeal triggered application of the postjudgment rate for the remainder of the case.

### 1. Plain Language

¶ 7 The last sentence of section 13-21-101(1) states in relevant part that

> if a judgment for money in an action brought
> to recover damages for personal injuries is
> appealed by the judgment debtor,
> postjudgment interest must be calculated on
> the sum . . . from the date of judgment
> through the date of satisfying the judgment
> and must include compounding of interest
> annually.

The district court's order did not mention this language, and instead focused on an earlier part of the same subsection:

> it is the duty of the court in entering judgment
> for the plaintiff in the action to add to the
> amount of damages . . . interest on the amount
> calculated at the rate of nine percent per
> annum, . . . and calculated from the date the
> suit was filed to the date of satisfying the
> judgment.

*Id.*

¶ 8    Ford argues that we should reverse because the district court ignored the last sentence of subsection (1), which, according to Ford, "explicitly states that the postjudgment interest rate applies whenever a judgment is 'appealed by the judgment debtor,' regardless of whether the judgment is eventually affirmed or reversed." But that is only true if the last sentence of subsection (1) is considered in isolation. When it is construed together with the remainder of section 13-21-101, it becomes clear that the switch

4

from prejudgment to postjudgment interest does not just depend on the judgment debtor's decision to file a notice of appeal, but also on the *outcome* of that appeal.

¶ 9    In particular, subsection (2)(a) provides that interest accrues at the postjudgment rate if the judgment is affirmed on appeal and subsection (2)(b) provides that if a money judgment "is modified or reversed with a direction that a judgment for money be entered in the trial court," postjudgment interest accrues from the date of judgment through the date of satisfying the judgment.[1] If, as Ford argues, *every* appeal triggered a switch from prejudgment to postjudgment interest, then subsections 2(a) and 2(b) would be mere surplusage. *See Treece, Alfrey, Musat & Bosworth, PC v. Dep't of Fin.*, 298 P.3d 993, 996 (Colo. App. 2011) (noting that a court interpreting a statute should reject interpretations that will render words or phrases superfluous). But the fact that the General Assembly chose to include those subsections demonstrates that it did not intend for postjudgment interest to accrue in every case

---

[1] Sections 13-21-101(3) and (4), C.R.S. 2019, outline the process for calculating the postjudgment interest rate, which is tied to the federal discount rate and adjusted on an annual basis by the Colorado Secretary of State.

once an appeal is filed. Indeed, under the presumption that the General Assembly does not choose statutory language idly, *Carlson v. Ferris*, 85 P.3d 504, 509 (Colo. 2003), it follows that subsection 2(b) — the only provision of the statute that contemplates a successful appeal by the judgment debtor — applies only if a money judgment is "modified" on appeal or is "reversed with a direction that a judgment for money be entered in the trial court." § 13-21-101(2)(b). Neither of those events occurred here. The result of Ford's appeal was not a modification of the judgment or a remand with instructions to enter a particular judgment. Instead, both the division and the supreme court reversed the judgment outright. And, as we explain next, reversal of that judgment left nothing for postjudgment interest to accrue on while the retrial was pending.

## 2. Single Judgment

¶ 10 "Except as otherwise permitted by statute or rule of court, there can be only one final judgment in any one action." *Jones v. Galbasini,* 134 Colo. 64, 68, 299 P.2d 503, 506 (1956) (citation omitted). When the mandate issued after the supreme court overturned the first verdict and ordered a new trial, the first

6

judgment ceased to exist. *See Butler v. Eaton*, 141 U.S. 240, 244 (1891) (holding that when a judgment is vacated it is, essentially, "without any validity, force, or effect, and ought never to have existed"); *Bainbridge, Inc. v. Douglas Cty. Bd. of Comm'rs*, 55 P.3d 271, 274 (Colo. App. 2002) (concluding that where a judgment has been successfully appealed, upon remand that judgment no longer exists). The effect of that reversal was to put the parties in the same posture they were in before the original judgment was entered on April 1, 2013. *See Sharon v. SCC Pueblo Belmont Operating Co., LLC*, 2019 COA 178, ¶ 17. For the purposes of section 13-21-101, that position was "pre-judgment."

¶ 11     According to section 13-21-101, interest on personal injury damages accrues at a rate of nine percent per annum from the date the injury occurred, through the date of satisfaction of the judgment, unless the judgment debtor appeals the judgment. But, because interest can only accrue if there is a judgment, the interest that did accrue up until the point that the supreme court issued its opinion reversing the outcome of the first trial vanished along with the judgment. Ford and Walker were, at that time, free to proceed in any way they saw fit, including by settling the case. The parties

chose to proceed again to trial, and the jury again awarded Walker nearly $3 million.

### 3. Practical Considerations

¶ 12   Our conclusion finds further support in the fact that adopting Ford's theory would require the district court to apply postjudgment interest to a judgment that did not yet exist. That is, under Ford's theory, even though the judgment on which it was accruing interest was entered on May 9, 2019, the district court should have retroactively charged postjudgment interest on that amount beginning on April 1, 2013. Nothing in section 13-21-101 suggests that the General Assembly contemplated the type of retroactive application of postjudgment interest that Ford urges us to apply.[2]

---

[2] The statute does, however, contemplate retroactive application of the postjudgment interest rate in another way. Section 13-21-101(1), C.R.S. 2019, provides in pertinent part that "if a judgment for money in an action brought to recover damages for personal injuries is appealed by the judgment debtor, postjudgment interest must be calculated . . . *from the date of judgment* through the date of satisfying the judgment." (Emphasis added.) Thus, if, as is often the case, any time passes between the entry of judgment and the judgment debtor's notice of appeal, any prejudgment interest that would have accrued during that time (and would have continued to accrue, if no appeal were filed) is wiped out and replaced by postjudgment interest from the date of the judgment.

8

¶ 13    Finally, while we acknowledge the large monetary gap between the parties' positions in this case, we remain cognizant of the fact that, because interest statutes derogate common law, they must be strictly construed. *Rodriguez*, 914 P.2d at 925. Judicial attempts to construe section 13-21-101 in a manner that aligns with perceived legislative intent have, in the past, created more problems than they have solved. *See Sperry v. Field*, 205 P.3d 365, 370-71 (Colo. 2009) (Eid, J., concurring in the judgment). Because the district court's ruling was consistent with the plain language of section 13-21-101, we may not delve further into whether it was also consistent with the General Assembly's intent.

## III.    Conclusion

¶ 14    The judgment is affirmed.

JUDGE DAILEY and JUDGE WELLING concur.