**ALLSTATE INSURANCE COMPANY, Petitioner,**

v.

**William R. STARKE; Jeffrey Glen Starke; Clifton Gregory Starke; Kate Josephine Starke; Matthew Martin Starke, a Minor Through his Parent and Guardian, William R. Starke; Andrew William Starke, a Minor Through his Parent and Guardian, William R. Starke; and William R. Starke, as Personal Representative of the Estate of Mary Kay Starke, Respondents.**

No. 88SC581.

Supreme Court of Colorado.

Sept. 10, 1990.

---

Zupkus & Ayd, P.C., Robert A. Zupkus and L. Kirk Leggott, Denver, for petitioner.

Law Offices of Daniel W. Dean, Daniel W. Dean, Fort Collins, for respondents.

Creamer and Seaman, P.C., Thomas J. Seaman, Denver, for amicus curiae, Colorado Defense Lawyers Ass'n.

Justice LOHR delivered the Opinion of the Court.

This case presents the issue of whether Allstate Insurance Company ("Allstate") is obligated under an automobile insurance policy to pay interest accruing prior to judgment on bodily injury damages assessed by a jury against Allstate's insured to the extent that the damages and interest exceed Allstate's policy limit for bodily injury liability. The district court, in a garnishment proceeding seeking to reach sums allegedly owed by Allstate to its insured, held that Allstate has no such obligation. The Colorado Court of Appeals reversed. *Starke v. Allstate Ins. Co.*, 771 P.2d 3 (Colo.App.1988). We agree with the district court. Accordingly, we reverse the judgment of the court of appeals and return the case to that court with directions to reinstate the judgment for Allstate.

## I.

On September 14, 1985, Mary Kay Starke died in an automobile accident in Larimer County, Colorado, resulting from the negligence of Bernard J. Lutter. At the time of the accident, Lutter carried automobile liability insurance with Allstate under a policy providing a $100,000 bodily injury liability limit.

Within ten days of the accident, Allstate tendered its $100,000 policy limit to Mary Kay Starke's family in exchange for a release of all claims against its insured. The Starkes rejected Allstate's offer and brought a wrongful death action against Lutter in Larimer County District Court.

On July 30, 1986, the Starkes obtained a judgment against Lutter in the amount of $241,555.44, plus costs and statutory interest at the rate of nine percent per annum from the date of the accident until paid. On the same day the judgment was issued, Allstate paid the Starkes its $100,000 liability obligation under the policy in partial satisfaction of the judgment. Allstate later paid the costs assessed by the court. The Starkes then sought to recover the balance owed on the judgment.

The Starkes obtained a writ of garnishment directed to Allstate as garnishee. The writ required that Allstate declare whether it possessed any personal property owned by Lutter. Allstate answered, denying that it possessed any such property. The Starkes traversed Allstate's answer to the writ, based on the position that Allstate was obligated for prejudgment interest on the damages assessed against Lutter for bodily injury even though this would require payment in excess of the bodily injury liability limit in the insurance policy.[1]

The district court found that the policy limited Allstate's liability to $100,000 in damages for bodily injury per person, with an "additional payments" clause providing, in relevant part, for payment of "all court

costs taxed against the insured" and "all interest on any judgment entered [against the insured] until Allstate has paid, tendered or deposited in court that part of the judgment which does not exceed the limit of Allstate's liability thereon." The district court concluded that Allstate was liable for up to $100,000 in damages under the policy's bodily injury coverage. It also found that the "additional payments" clause obligated Allstate for costs and *postjudgment* interest in excess of the $100,000 policy limit until Allstate paid that part of the judgment that did not exceed its policy limit, but did not obligate Allstate to pay *prejudgment* interest over and above the policy limit. Relying on these conclusions, the district court ruled that Allstate's payment of $100,000 on the date the judgment was issued satisfied its obligations under its insurance policy. The court, therefore, denied the Starkes' traverse to Allstate's answer and entered judgment for Allstate.

The court of appeals reversed, holding that the policy's "additional payments" clause was ambiguous in that it did not expressly limit Allstate's liability to postjudgment interest. Under the rule that any ambiguity in an insurance policy must be construed in favor of coverage and against limitations inuring to the benefit of the policy's drafter, the court held that Allstate was obligated to pay *all* interest, including prejudgment interest in excess of its $100,000 policy limit for bodily injury. Furthermore, Allstate's payment of the $100,000 policy limit following return of a verdict against its insured did not satisfy Allstate's obligation to pay prejudgment interest, and thus did not prevent accrual of postjudgment interest on the balance of the judgment against its insured. Finally, the court of appeals held, Allstate's initial tender of the $100,000 policy limit within ten days of the accident was conditioned upon release of its insured from further liability, and thus was insufficient to re-

---

1. In the traverse, the Starkes also asserted that Allstate was obligated for postjudgment interest at the statutory rate on the difference between the $241,555.44 assessed as damages for bodily injury and the $100,000.00 paid by Allstate. Under *Security Ins. Co. v. Houser,* 191 Colo. 189,

552 P.2d 308 (1976), if Allstate's payment of the $100,000 did not satisfy its obligations for prejudgment interest under the insurance contract, Allstate would be liable for postjudgment interest on the unpaid amount of the judgment.

lieve Allstate of liability for interest accruing after the tender.

## II.

In this certiorari review proceeding, Allstate argues that the court of appeals erroneously categorized prejudgment interest as a form of interest rather than an element of compensatory damages subject to the $100,000 limit for bodily injury liability under its automobile insurance policy with Lutter. We agree.

## A.

A party bringing a tort action seeking damages for personal injuries may claim interest on any compensatory damages eventually awarded from the date the action accrued until satisfaction of the judgment. § 13–21–101(1), 6A C.R.S. (1987). The trial court entering judgment for a prevailing plaintiff who timely made such claim must add interest for the prescribed period at the statutory rate to the amount of damages awarded by the fact-finder, and include it as a part of the judgment. *Id.*[2] The judgment entered against Lutter in the present case complied with these requirements, providing for damages "of $241,555.44 plus interest at the rate of 9% per annum from and after September 14, 1985 [the date the claim accrued] until paid." This case requires that we decide to what extent Allstate is obligated under its insurance contract to satisfy this judgment against its insured.

Allstate's insurance policy with Lutter provides $100,000 in liability coverage for "all damages which the insured shall be legally obligated to pay because of ... bodily injury sustained by any person ... arising out of the ownership, maintenance or use ... of the owned automobile or a non-owned automobile." The policy also states that "the [$100,000] limit of bodily injury liability ... as applicable to ... 'each person' is the limit of Allstate's liability for *all damages arising out of bodily*

*injury* sustained by one person in any one occurrence." (Emphasis added.)

The policy also contains an "additional payments" clause, whereby Allstate contracted to pay "all court costs taxed against the insured," and *"all interest on any judgment* entered in such suit until Allstate has paid, tendered or deposited in court that part of the judgment which does not exceed the limit of Allstate's liability thereon." (Emphasis added.)

Allstate maintains that any interest claimed on damages for personal injuries accruing prior to entry of judgment against the insured is part of those damages, and therefore recoverable under the bodily injury liability coverage provisions up to the $100,000 limit of the policy rather than as interest under the "additional payments" clause. In adopting this position, Allstate concedes that notwithstanding the policy's silence on this matter, it is liable for interest accruing before judgment to the extent that the damages awarded for bodily injury plus the prejudgment interest on such award do not exceed the policy limit for damages. The Starkes, on the other hand, argue that prejudgment interest falls within the "additional payments" clause provision for payment of "interest on any judgment," which is not subject to any limitation on coverage. The central issue in this appeal, then, is whether Lutter's personal obligation to pay prejudgment interest exceeding the policy limit for bodily injury should be paid by Allstate by virtue of the policy's terms.

## B.

 Insurance policies are contracts, and must be construed to carry out the intent of the parties. *E.g., Marez v. Dairyland Ins. Co.,* 638 P.2d 286, 288–89 (Colo. 1981); *Jennings v. Brotherhood Acc. Co.,* 44 Colo. 68, 77, 96 P. 982, 984 (1908); *Beeson v. State Auto. and Cas. Underwriters,* 32 Colo.App. 62, 69, 508 P.2d 402, 406, *aff'd,* 183 Colo. 284, 516 P.2d 623 (1973). Whenever possible, the parties' intent must

---

**2.** § 13–21–101(1) also provides for annual compounding of interest from the date suit was filed. Subsections (2), (3) and (4) of

§ 13–21–101(1) provide further detailed rules for calculation of interest in the event a judgment is appealed.

be ascertained from the policy language alone. *Columbian Nat. Life Ins. Co. v. McClain*, 115 Colo. 458, 461, 174 P.2d 348, 350 (1946); *Benham v. Mfrs. and Wholesalers Indem. Exch.*, 685 P.2d 249, 253 (Colo.App.1984). In construing a policy, words should be given their plain meaning according to common usage, *Mandles v. Guardian Life Ins. Co. of Am.*, 115 F.2d 994 (10th Cir.1940); *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678 (Colo.1989), and strained constructions should be avoided, *see Standard Life & Acc. Ins. Co. of Detroit, Mich. v. McNulty*, 157 F. 224 (8th Cir.1907); *Johnson v. American Family Life Assur. Co. of Columbus*, 583 F.Supp. 1450 (D.Colo.1984); *Standard Marine Ins. Co. v. Peck*, 140 Colo. 56, 342 P.2d 661 (1959).

■ We conclude that the "additional payments" provision of Allstate's policy with Lutter is incapable of supporting the construction urged by the Starkes. It provides for payment of "all interest *on any judgment*." (Emphasis added.) Clearly, for there to be interest "on" a judgment, there must first be a judgment. Interest accruing *before* entry of judgment is not interest *on* a judgment, and thus cannot fall within the ambit of the "additional payments" provision.

In *Houser v. Eckhardt*, 35 Colo.App. 155, 532 P.2d 54 (1974), *aff'd sub nom. Security Ins. Co. v. Houser*, 191 Colo. 189, 552 P.2d 308 (1976), the Colorado Court of Appeals interpreted an insurance policy providing $25,000 in coverage for damages for bodily injury plus *"all interest accruing after entry of judgment* until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon...." *Houser*, 35 Colo.App. at 158, 532 P.2d at 55. (Emphasis added.) The court held that the policy could not be construed to obligate the insurer for prejudgment interest awarded to the plaintiff pursuant to statute. We believe that the language

"all interest on any judgment" at issue in the present case, is functionally equivalent to the phrase "all interest accruing after entry of judgment," as construed in *Houser*.

Furthermore, we disagree with the court of appeals' conclusion that the "additional payments" provision is ambiguous. Although awkwardly phrased, there is no ambiguity concerning whether it encompasses interest accruing before a judgment is entered against the insured. Prejudgment interest simply cannot be included in a provision for payment of "all interest on any judgment" under any reasonable construction of that phrase.

The only other source of an obligation of Allstate to pay prejudgment interest is to be found in the policy's provision for bodily injury liability coverage. Based on the language of the policy and a long line of cases treating prejudgment interest as a form of damages, we conclude that such interest falls within that coverage and is therefore subject to the $100,000 policy limit applicable to damages for bodily injury.

Moratory interest, or interest as damages, has been allowed in Colorado for well over one hundred years.[3] *Davis Cattle Co., Inc. v. Great W. Sugar Co.*, 393 F.Supp. 1165, 1188 (D.Colo.1975), *aff'd*, 544 F.2d 436 (10th Cir.1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). The term "moratory *interest*" is misleading, for where allowed it is awarded not as interest as such but as damages. *See Bankers Trust Co. v. International Trust Co.*, 108 Colo. 15, 33, 113 P.2d 656, 665 (1941). It is, in other words, "the *equivalent* of interest in the way of damages." *Bankers Trust*, 108 Colo. at 33, 113 P.2d at 665 (emphasis added); *see also Omaha & Grant Smelting & Refining Co. v. Tabor*, 13 Colo. 41, 59, 21 P. 925, 931 (1889).

■ In contract actions, for example, moratory interest, or prejudgment interest, is employed to compensate the plaintiff for

---

**3.** The term "moratory interest" is of more recent origin. It is used to describe the equitable concept of awarding prejudgment interest as a part of common law damages. *See* Tredennick and Cairns, *Colorado's Prejudgment Interest Statute: Potential For Market Rate Interest*, 12 Colo.Law. 1605, 1605 (1983).

the monetary losses sustained on wrongfully withheld money or property from the accrual of a claim for relief until entry of judgment. *See, e.g., Huffman v. Caterpillar Tractor Co.,* 645 F.Supp. 909, 913 (D.Colo.1986), *aff'd,* 908 F.2d 1470 (10th Cir.1990); *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362, 363–64 (Colo. 1989); *Acme Delivery Serv., Inc. v. Samsonite Corp.,* 663 P.2d 621, 626 (Colo.1983); *Browne v. Steck,* 2 Colo. 70, 77 (1873); *see also* § 5–12–102, 2 C.R.S. (1989 Supp.). We have previously noted that prejudgment interest in tort actions for personal injuries is specifically provided for by statute. § 13–21–101, 6A C.R.S. (1987). As the Colorado Court of Appeals has correctly recognized, such prejudgment interest is an element of compensatory damages in actions for personal injuries, awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor. *See Mladjan v. Public Serv. Co.,* No. 88CA1872, —— P.2d —— (Colo.App. May 10, 1990); *Heid v. Destefano,* 41 Colo. App. 436, 437, 586 P.2d 246, 247 (1978); *Houser v. Eckhardt,* 35 Colo.App. 155, 160, 532 P.2d 54, 57 (1974), *aff'd on other grounds sub nom. Security Ins. Co. v. Houser,* 191 Colo. 189, 552 P.2d 308 (1976); § 13–21–101, 6A C.R.S. (1987). In other words, the statute codifies the moratory interest principle in those tort actions for personal injuries to which it applies.[4]

In *Houser,* the court of appeals discussed the nature of prejudgment interest on an award for personal injuries:

This pre-judgment interest is in the nature of another item of damages. That is, it represents a legislatively prescribed award for any delay in plaintiff's receipt of money to which he has been found legally entitled. Thus, the insurer's liability for damages includes both the amount of the jury verdict and any interest on that verdict accruing prior to the entry of judgment. Here, by the terms of the policy, the maximum amount of the insurer's obligation for the total of these two items of damages may not exceed $25,000.

*Houser,* 35 Colo.App. at 160–61, 532 P.2d at 57 (citations omitted).[5]

The overwhelming majority of other jurisdictions considering this issue likewise hold that prejudgment interest is an element of compensatory damages, thus limiting an insurer's liability for prejudgment interest to the policy's damages coverage. For example, in *Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422 (Iowa 1988), the Iowa Supreme Court held that absent an express policy provision to the contrary, the rule that prejudgment interest is an element of compensatory damages limits an insurer's liability for prejudgment interest to the coverage afforded by the damages clause under the policy. In *Nunez v. Nationwide Mut. Ins. Co.,* 472 A.2d 1383 (Me.1984), the Maine Supreme Court chose to follow "[t]he better rule and the weight of authority in other jurisdictions," *id.* at 1384, and held that except where express insurance policy provisions or statutory requirements demand otherwise, an insurer is not obligated to pay prejudgment interest in excess of the policy limit for damages. The Alaska Supreme Court interpreted a medical malpractice insurance policy obligating the insurer to pay all sums the insured became liable to pay "for damages" in *Guin v. Ha,* 591 P.2d 1281 (Alaska 1979). Beginning with the recognition that prejudgment interest is an item of compensatory damages, the court held that, "[s]o classified, prejudgment interest falls within the liability damage clause in the insurance contract and is subject to the amount limitation contained therein." *Id.* at 1287. The court then concluded that "when an insurer pays on behalf of its insured the

---

**4.** For extensive discussions of prejudgment interest in Colorado, *see* Tredennick and Cairns, *Collecting Pre- and Post–Judgment Interest in Colorado: A Primer,* 15 Colo.Law. 753 (1986); and Tredennick and Cairns, *Colorado's Prejudgment Interest Statute: Potential For Market Rate Interest,* 12 Colo.Law. 1605 (1983).

**5.** We affirmed the judgment of the court of appeals in *Security Ins. Co. v. Houser,* 191 Colo. 189, 552 P.2d 308 (1976), but confined our discussion in that decision to the issue of an insurer's liability for postjudgment interest on the amount of the judgment in excess of policy limits.

limits of liability coverage to an injured third party, it discharges its obligation under the insurance policy." *Id.* In *Factory Mut. Liab. Ins. Co. of Am. v. Cooper,* 106 R.I. 632, 262 A.2d 370 (1970), the Rhode Island Supreme Court held that an insurer's liability under an automobile liability insurance policy obligating it to pay "all sums which the insured shall become legally obligated to pay as damages" because of bodily injury encompassed statutory prejudgment interest as well as the jury's award and was therefore subject to the policy's limit for bodily injury coverage, *id.* 262 A.2d at 373. *See also Balder v. Haley,* 441 N.W.2d 539 (Minn.App.1989); *Laplant v. Aetna Cas. & Sur. Co.,* 107 N.H. 183, 219 A.2d 283 (1966); *Kotzian v. Barr,* 81 N.J. 360, 408 A.2d 131 (1979); *Cleghorn v. Ocean Accident & Guar. Corp.,* 244 N.Y. 166, 155 N.E. 87 (1926); *Russo v. Kemper Group,* 146 A.D.2d 701, 537 N.Y.S.2d 200 (1989); *Bossert v. Douglas,* 557 P.2d 1164 (Okla.App.1976).

Michigan and Louisiana are the only states holding insurers liable for prejudgment interest in excess of their liability limits for damages in absence of an express provision in the insurance policy requiring such a result. *See Burton v. Foret,* 498 So.2d 706 (La.1986);[6] *Matich v. Modern Research Corp.,* 430 Mich. 1, 420 N.W.2d 67 (1988); *Denham v. Bedford,* 407 Mich. 517, 287 N.W.2d 168 (1980). The Michigan approach was recently considered—and rejected—by the Iowa Supreme Court. The latter court first recognized the rationale underlying the Michigan court's decisions:

> In *Denham,* the Michigan Supreme Court concluded that an insurer's liability for prejudgment interest "may act as an incentive to the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. The insurer risks nothing. Even if protracted litigation results, the insurer will only be liable for its policy limits—all the while reaping a tidy sum from its investment of the policy limits."

*Milne,* 424 N.W.2d at 425 (quoting *Denham,* 287 N.W.2d at 175). Rejecting the result reached in Michigan, the Iowa Supreme Court stated:

> We share the Michigan court's concern for the prompt settlement of meritorious claims but we are convinced that it ignores the insurer's risk of liability for compensatory and punitive damages for bad faith refusal to promptly settle a claim. Moreover, we are unwilling to take the extraordinary step of rewriting the parties' insurance contract in order to achieve the [salutary] goal of minimizing protracted litigation. To do so would "require the insurer to bear the burden of a risk it has not assumed."

*Id.* (citations omitted) (quoting *Guin,* 591 P.2d at 1291). We agree with the Iowa Supreme Court that there are a number of policy arguments on both sides of this question.[7] Ultimately, however, our longstanding recognition that prejudgment interest is an element of damages confines our task to construction of the insurance contract between Allstate and Lutter.

Finally, we note that Allstate's auto insurance policy in the present case specifically includes within the coverage for bodily injury "all damages arising out of bodily injury." We have seen that prejudgment interest is a form of damages. Based as it

---

**6.** *Burton v. Foret* relied primarily upon the Louisiana rule that holds the tortfeasor and his insurer liable *in solido* (jointly and severally) on an obligation, combined with a statute that imposes prejudgment interest liability on the tortfeasor. *See* 498 So.2d at 710–13.

**7.** In addition to the policy considerations discussed by the Iowa Supreme Court in *Milne,* Allstate argues that allowing prejudgment interest in excess of policy limits could well discourage settlement of liability claims by making estimates of the plaintiff's probable recovery nearly impossible to calculate, and for the same reason, could introduce great uncertainty into the insurer's task of setting premiums based on liability exposure. Rather than defend its insured, insurers could be forced to acquiesce to the plaintiff's demand at an early stage of the proceedings, notwithstanding a meritorious defense, to avoid risking accrual of a large amount of prejudgment interest while the plaintiff defers bringing an action.

is on the compensation awarded for bodily injury, prejudgment interest arises out of bodily injury and therefore is comprehended within the bodily injury coverage of the policy and subject to its limit.

### C.

 The Starkes seek to limit the precedential effect of the court of appeals' decision in *Houser* and similar decisions in this and other jurisdictions holding that prejudgment interest is an element of compensatory damages by noting that the prejudgment interest statute has been amended since *Houser* was announced. They concede that *Houser* treats prejudgment interest as an element of compensatory damages, but argue that as later amended, the statute no longer supports the result reached in that case. We disagree.

The version of the prejudgment interest statute in effect at the time *Houser* was decided provided as follows:

> In all actions brought to recover damages for personal injuries ... it is lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date said suit is filed; and, when such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict ... interest on such amount calculated at the legal rate from the date such suit was filed *to the date of entering the judgment, and to include the same in said judgment as a part thereof.*

§ 13–21–101, 6 C.R.S. (1973) (emphasis added). Interest on such judgment from the time of entry until paid was governed by the general postjudgment interest statute, § 5–12–102, 2 C.R.S. (1973).[8] Under this statutory scheme, therefore, a clear dichotomy existed between prejudgment and postjudgment interest. The Starkes contend that a 1975 amendment to section 13–21–101 has eliminated the distinction between the two types of interest. As amended, the statute provides:

> In all actions brought to recover damages for personal injuries ... it is lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date said suit is filed;[9] and, when such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict ... interest on such amount ... calculated from the date said suit was filed *to the date of satisfying the judgment, and to include the same in said judgment as a part thereof.*

Ch. 151, § 13–21–101, 1975 Colo. Sess. Laws 569 (emphasis added).

We conclude that this change does not eliminate the substantive difference between prejudgment interest added to compensation awarded for personal injuries as a form of damages, and the interest accruing after entry of judgment until the judgment is satisfied. The legislature simply chose to adopt a single rate of interest applicable to the entire period from accrual of the action until payment of the judgment and to eliminate the compounding of interest that previously resulted from computing postjudgment interest on a quantified judgment that included prejudgment interest. There is no suggestion that the legislature intended to alter the long-recognized character of prejudgment interest as an element of damages. *See, e.g., Houser.* That the legislature continued to recognize a distinction between prejudgment and postjudgment interest is evident from a subsequent statutory amendment to section 13–21–101(1) that explicitly uses both terms. The statute as amended states in pertinent part that "[o]n and after January 1, 1983, if a judgment for money in an action brought to recover damages for personal injuries is appealed by the judgment debtor, *interest, whether prejudgment or postjudgment,* shall be calculated on such sum ... from the date the action accrued...." Ch. 39, sec. 3, § 13–21–101(1), 1982 Colo.Sess.Laws 227 (emphasis added).

---

8. Formerly § 73–1–2, 4 C.R.S. (1963). *See Security Ins. Co.,* 191 Colo. at 194 n. 2, 552 P.2d at 312 n. 2.

9. § 13–21–101 was amended in 1979 to allow the plaintiff, "on and after July 1, 1979," to claim interest on the damages claimed from the date the action accrued. Ch. 55, sec. 3, § 13–21–101, 1979 Colo.Sess.Laws 315, 316.

We conclude that the amendments to section 13-21-101 subsequent to *Houser* do not affect the reasoning of that case or impair either *Houser*'s precedential effect or the precedential value of similar decisions in this and other jurisdictions predicated on statutes like that in effect at the time *Houser* was decided.

### III.

We also disagree with the Starkes' contention that the result reached by the court of appeals in this case is mandated by the Motor Vehicle Financial Responsibility Act, §§ 42-7-101 to -510, 17 C.R.S. (1984 & 1989 Supp.) ("Financial Responsibility Act") in order to provide the insurance protection required thereby. That act does not even require that every motorist carry insurance. *U.S. Fire Ins. Co. v. Goldstein Transp.*, 30 Colo.App. 478, 481, 496 P.2d 1079, 1080 (1972). Rather, it requires that an automobile owner or operator involved in an accident provide certain security for any judgment that might be entered against such owner or operator as a result of the accident and file "[p]roof of financial responsibility for the future." § 42-7-301(1); *Murphy v. Dairyland Ins. Co.*, 747 P.2d 691, 694 (Colo.App.1987); *Meyer v. State Farm Mutual Auto. Ins. Co.*, 689 P.2d 585, 592 (Colo.1984). The requisite proof must consist of "proof of ability to respond in damages for liability, on account of accidents ... in the amount of twenty-five thousand dollars because of bodily injury to or death of one person in any one accident...." § 42-7-103(14). There is no reference to interest in this provision. A person affected by an order or act of the executive director of the department of revenue under the Financial Responsibility Act may request a hearing from the director, § 42-7-201(2)(a), and later judicial review of the action of the director, § 42-7-201(2)(e), in which case the court may require as a condition of a postponement of the effective date of the director's order that an automobile liability policy, bond or security deposit be obtained and maintained pending review. The statutory definition of a complying policy or bond to be provided for such purpose as one "subject, if the accident has resulted in bodily injury or death, to a limit, *exclusive of interest and costs*, of not less than twenty-five thousand dollars because of bodily injury to or death of one person in any one accident....," § 42-7-103(2) (emphasis added), is limited under the Financial Responsibility Act to security on appeal.[10] The Financial Responsibility Act, therefore, does not mandate a minimum amount of coverage, exclusive of interest and costs, as a matter of course.

The judgment of the Colorado Court of Appeals is reversed, and the case is remanded to that court with directions to reinstate the judgment for Allstate.[11]

---

**10.** We do not decide whether "interest" within the meaning of § 42-7-103(2) includes prejudgment interest.

**11.** Allstate raised two further issues on certiorari—whether the court of appeals erred in holding that Allstate's payment of the $100,000 policy limit on the day judgment was entered against its insured was ineffective to discharge its contractual obligations by virtue of its failure to include prejudgment interest, and whether its tender of the $100,000 policy limit within ten days of the accident in exchange for release of its insured tolled further accrual of prejudgment interest. The first issue is resolved by our holding that Allstate fully discharged its obligation for prejudgment interest by paying the $100,000 policy limit on the day judgment was entered. Our resolution of this case also makes it unnecessary to consider the second issue.