USAA, Petitioner

v.

**Richard Ernest PARKER, Respondent.**

**No. 07SC524.**

Supreme Court of Colorado,
En Banc.

Jan. 20, 2009.

---

352

⊸39(2.35)

Neil C. Bruce, Bruce & Salt, LLC, Colorado Springs, Colorado, Attorneys for Petitioner.

Lloyd C. Kordick, III, Lloyd C. Kordick & Associates, Colorado Springs, Colorado Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## Introduction

In this appeal, we determine which of Colorado's two prejudgment interest statutes controls the calculation of prejudgment interest awarded to an insured in an underinsured motorist ("UIM") case brought against his insurer to recover benefits arising out of an underlying tort: the "personal injury statute," [1] which governs prejudgment interest in cases where damages for personal injuries are sought, or the "wrongful withholding statute," [2] which governs prejudgment interest in cases where damages for wrongful withholding [3] are sought.[4][5]

In *Parker v. USAA*, —— P.3d ——, No. 05CA2361, 05CA2569, 2007 WL 1289614, slip op. (Colo.App. May 3, 2007), the court of appeals held that the "personal injury statute" controls the calculation of prejudgment interest in such cases and thus Petitioner USAA, Respondent Richard Parker's uninsured/underinsured motorist (UM/UIM) insurer, was liable to Parker for prejudgment interest on his UIM claim at rate of nine percent per annum from the date of Parker's accident as mandated by that statute.

We affirm. As a threshold matter, we hold that USAA's payment of the disputed interest after it filed a notice of appeal did not moot the case under either the acceptance-of-benefits doctrine or the satisfaction-of-judgment doctrine.

The plain language of Colorado's UM/UIM statute, section 10–4–609, C.R.S. (2002), provides that UIM insurance must include coverage for all "damages" an insured is legally entitled to recover against the tortfeasor, up to the insured's UIM policy limits. Because prejudgment interest is an element of "damages," the language of section 10–4–609 mandates that the insured recover the same measure of prejudgment interest he would be entitled to recover in a direct action against the tortfeasor, that is, prejudgment interest at a rate of nine percent per annum from the date of the accident under the personal injury statute.

Likewise, we have consistently held that the legislative intent behind section 10–4–609 is to give Coloradans the opportunity to recover compensation for losses from their UIM insurer "in the same manner" and "to the same extent" as they would recover for such losses from a tortfeasor who was insured in amounts equal to the insured's UIM coverage. If the wrongful withholding statute applied to claims such as Parker's, an insured would recover less in such an action than he would in a direct action against a tortfeasor who is insured to the same extent that he is, thus contravening our well-established understanding of the legislature's intent.

The plain language of the "personal injury statute" provides that the nature of the damages sought by the plaintiff, rather than the source of the defendant's obligation to pay the plaintiff, triggers its application.[6] Al-

---

1.  § 13–21–101(1), C.R.S. (2002)

2.  § 5–12–102, C.R.S. (2002)

3.  We recently explained that the term " '[w]rongful withholding' indicates that the aggrieved party lost or was deprived of something to which she was otherwise entitled." *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825 (Colo.2008). As the court of appeals noted, section 5–12–102 indicates that it applies in all cases where such damages are sought, except in situations where the plaintiff seeks damages for personal injury under section 13–21–101(1).

4.  We granted certiorari review of the following issue:

    Whether prejudgment interest awarded on a judgment for underinsured motorist insurance benefits accrues at a rate of 8% per annum from the date the monies are owed under section 5–12–102, C.R.S. (2008) or whether prejudgment interest accrues at a rate of 9% per annum for actions brought to recover damages for personal injuries under section 13–21–101, C.R.S. (2008) from the date of the automobile accident.

5.  In this case, we address only the calculation of prejudgment interest, which, under all cases within the ambit of section 13–21–101(1), is calculated at a rate of nine percent per annum. We address neither the proper timing of the commencement of annual compounding of interest nor the calculation of postjudgment interest, which we previously addressed in *Rodriguez v. Schutt*, 914 P.2d 921, 929 (Colo.1996).

6.  Section 13–21–101(1) provides:

    In all actions brought to recover damages for personal injuries sustained by any person re-

though USAA's obligation as a UIM insurer is contractual, its contract requires the payment of personal injury damages to the insured.

Thus, we hold that when an insured succeeds in a claim against an insurer for UIM benefits arising from personal injuries, the insured's prejudgment interest award is calculated under the "personal injury statute," and not under the "wrongful withholding statute." Prejudgment interest for underinsured motorist benefits therefore accrues at a rate of nine percent per annum from the date of the accident as mandated by the "personal injury statute."

We remand this case to the court of appeals to be returned to the trial court with directions to enter judgment consistent with this opinion.

**Facts and Proceedings Below**

Respondent Richard Parker and four other motorists were injured in a motor vehicle chain reaction accident caused by Stephen Maxwell. Maxwell's liability insurance was limited to $50,000. Twelve days later, Parker filed a claim for UIM benefits with USAA, his insurer, and twenty days after the accident, filed suit against Maxwell, alleging that Maxwell negligently caused his injuries. Parker also filed a third party complaint against USAA for UIM benefits, alleging that the litigation determining Maxwell's liability for Parker's injuries "should determine the liability of USAA for payment of underinsured benefits as required by Colorado statute C.R.S. 10–4–609," the UM/UIM statute, and that "USAA is a necessary and essential party to determination of that issue as to the amount of any offset they would be entitled to against their coverage for underinsured benefits purchased by Richard Parker."

Maxwell's insurer paid the $50,000 liability limit into the court's registry fund and, pursuant to a settlement agreement, the injured parties agreed that Parker would receive $12,500 of this amount. Parker thereafter released Maxwell from further liability, leaving USAA as the sole remaining defendant in the case.

Approximately twenty-one months after filing suit, the case was tried to a jury; however, the jury could not agree on a verdict and a mistrial was declared. Six months later, the parties stipulated to a court decision based on the first trial record.

The trial court ruled in Parker's favor and awarded him $201,000 in damages, not including interest. The trial court then awarded Parker prejudgment interest at nine percent per annum from the date of the accident, as mandated by the "personal injury statute," section 13–21–101(1), and certain costs not pertinent to this appeal. The trial court reasoned that, by its plain language, the "personal injury statute" applies to this case because "Defendant's obligation arose from contract, but Plaintiff's injury was in tort." The trial court further stated that the legislative history of the UM/UIM statute indicates that the General Assembly intended that when an innocent insured is injured by an uninsured or underinsured motorist, then the insured should recover against the insurer to the same extent as he would against the tortfeasor, up to the insured's UIM limits. The court reasoned that because Parker would be entitled to prejudgment interest as calculated under section 13–21–101(1) in a direct action against Maxwell, the UM/UIM statute requires that he receive the same treatment when recovering against his UM/UIM insurer, USAA.

USAA filed a supersedeas bond[7] in the amount of $93,000 to stay the execution of

sulting from or occasioned by the tort of any other person ... it is lawful for the plaintiff in the complaint to claim interest on damages from the date the action accrued. When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such amount calculated at the rate of nine percent per annum on actions filed on or after July 1, 1975, and at the

legal rate on actions filed prior to such date, and calculated from the date such suit was filed to the date of satisfying the judgment and to include the same in said judgment as a part thereof.

7. A supersedeas bond is an appellant's bond to stay execution on a judgment during the pendency of the appeal. *O'Donnell v. State Farm Mut. Auto. Ins. Co.*, 186 P.3d 46, 48 n. 2 (Colo. 2008).

judgment pending appeal. Several months later, after filing its notice of appeal, USAA paid Parker the entire judgment, including prejudgment interest at nine percent. Parker acknowledged receipt of the judgment in three separate partial satisfactions of judgment. In the third partial satisfaction of judgment, Parker acknowledged receipt of the amount of interest currently in dispute. That third partial satisfaction of judgment states: "The proper calculations of the judgment and interest are pending on appeal. This Partial Satisfaction of Judgment does not include these calculations that are currently on appeal." At oral argument, counsel for USAA stated that USAA paid the disputed interest, even though it already filed a notice of appeal, because it wished to avoid both a suit for insurer bad faith and the expense of maintaining a supersedeas bond.

After USAA paid the disputed interest and Parker filed the partial satisfactions of judgment, USAA requested release of their supersedeas bond; the request was granted and the bond was released. Parker then filed a motion in the court of appeals requesting an order to show cause why USAA's appeal was not moot because USAA had already paid the entire judgment, including the disputed interest. A motions division of the court of appeals denied Parker's motion.

The court of appeals reviewed the motions division's ruling that the appeal was not moot, USAA's appeal of the trial court's ruling on prejudgment interest, and two issues raised by Parker on cross-appeal.[8] *Parker*, —— P.3d at ——, No. 05CA2361, 05CA2569, 2007 WL 1289614, slip op. at 1–2. That court held that the case was not moot because, under the acceptance-of-benefits doctrine, only a " 'mutual manifestation of an intention to bring the litigation to a definite conclusion' " is sufficient to bar the subsequent appeal of a particular issue, " 'and not the fact, standing alone, that benefits under the judgment were accepted.' " *Id.* at 2, 2007 WL 1289614 (quoting *Main Elec., Ltd. v. Printz Servs. Corp.*, 980 P.2d 522, 528 (Colo. 1999)). Because the third partial satisfaction

judgment Parker filed acknowledged that the proper calculation of interest was still in dispute, the required mutual manifestation of intention to conclude litigation on the issue of prejudgment interest did not exist. *Parker*, —— P.3d at ——, No. 05CA2361, 05CA2569, 2007 WL 1289614, slip op. at 2.

As to the merits of the case, the court of appeals affirmed the trial court's determination that prejudgment interest accrues under the "personal injury statute" when an insured seeks to recover UIM benefits from his insurer arising out of the underlying claim for personal injuries in an auto accident. *Id.* The court reasoned that the plain language of the "wrongful withholding statute" indicated that it was a statute of general applicability, which carves out an exception for cases where the application of the "personal injury statute" is appropriate. *Id.* at 3, 2007 WL 1289614. The "personal injury statute", in turn, states that it applies where damages for personal injury are sought. *Id.* at 4, 2007 WL 1289614. In this case, the court concluded, Parker's complaint set forth claims for damages based upon Maxwell's negligence in causing his injuries. *Id.* The court of appeals also relied on the legislative history of section 10–4–609, the UM/UIM statute. *Id.* The court of appeals examined several of our cases and determined, as did the trial court, that the legislature intended for those with UM/UIM coverage to recover in the same manner against their insurer as they would in a direct action against the tortfeasor. *Id.*

Finally, the court distinguished two of its cases that applied the "wrongful withholding statute" in calculating prejudgment interest on UM/UIM claims brought by an insured: *Peterman v. State Farm Mutual Auto. Insurance Co.*, 8 P.3d 549, 551 (Colo.App.2000), and *Bowen v. Farmers Insurance Exchange*, 929 P.2d 14, 15 (Colo.App.1996). *Parker*, —— P.3d at ——, No. 05CA2361, 05CA2569, 2007 WL 1289614, Slip Op. at 5. The court reasoned that those cases were not controlling because neither case addressed the issue of whether the "personal injury statute" applies

---

8. We denied certiorari on the two issues raised on cross-appeal: the trial court's denial of (1) interest on Parker's portion of Maxwell's settlement ($12,500) and (2) certain costs. Consequently, these issues are not before this court.

to claims for UIM benefits arising from personal injuries caused by a tortfeasor. *Id.*

Both USAA and Parker petitioned for certiorari review. We granted USAA's petition, which sought review of the court of appeals' judgment as to prejudgment interest and we now affirm the court of appeals' judgment that the "personal injury statute" governs the calculation of prejudgment interest in this case.

## Analysis

### I. Mootness

■ Because USAA has paid Parker the disputed interest, as a threshold jurisdictional matter, we must determine whether the current appeal is moot before proceeding to the merits of the case. When issues presented in litigation become moot because of subsequent events, an appellate court will decline to render an opinion on the merits of an appeal. *Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424, 426–27 (Colo.1990).

■ Parker argues that because USAA paid the disputed amount of interest and successfully moved the trial court to release its supersedeas bond, USAA accepted the benefits of the judgment and is, therefore, precluded from appealing the trial court's ruling as to the disputed interest under the acceptance-of-benefits doctrine. We disagree.

■ Under the acceptance-of-benefits doctrine, a party who " 'accepts an award or legal advantage under a judgment normally waives his right to any review of the adjudication which may again put in issue his right to the benefit which he has accepted.' " *HealthONE v. Rodriguez*, 50 P.3d 879, 886–87 (Colo.2002) (quoting *Farmers Elevator Co. of Sterling v. First Nat'l Bank*, 181 Colo. 231, 234, 508 P.2d 1261, 1263 (1973)). The acceptance-of-benefits doctrine bars an appeal only when two elements are met: (1) the appeal raises an issue or issues that would force the reviewing court to determine the appealing party's right to receive a benefit it has already accepted; and (2) the parties have manifested a mutual intention to bring the litigation on the issue appealed to a " 'definite conclusion upon a basis acceptable to all par-

ties.' " *Printz*, 980 P.2d at 528 (quoting *United States ex. rel. H & S Indus., Inc. v. F.D. Rich Co.*, 525 F.2d 760, 764 (7th Cir. 1975)).

The first element, the requirement that the appeal put in issue the appellant's right to receive a benefit already accepted, is not met in this case because USAA does not seek review of any issue that jeopardizes its right to have its supersedeas bond released. This court granted review on the issue of prejudgment interest, not the propriety of the trial court's order to release the bond. No matter what this court's holding on the issue of prejudgment interest, there is no question that USAA satisfied any possible judgment that could be pronounced at this stage of the proceedings, that Parker executed a partial satisfaction of judgment acknowledging receipt of that amount, and that, therefore, USAA was entitled to have its supersedeas bond released. Moreover, although the appeal puts into issue *Parker's* right to a benefit of the judgment already received and accepted (prejudgment interest at nine percent per annum from the date of the accident), it is *USAA* that seeks review.

■ Nor is the second element, that the parties manifest a mutual intention to bring the litigation on the issue appealed to a " 'definite conclusion upon a basis acceptable to all parties,' " satisfied in this case. *Printz*, 980 P.2d at 528 (quoting *F.D. Rich Co.*, 525 F.2d at 764). As the court of appeals noted, the third partial satisfaction of judgment filed by Parker, which acknowledged receipt of the disputed interest, specifically stated that the amount of prejudgment interest owed was still in dispute and the issue was being appealed. Hence, Parker proceeded as though the proper rate of prejudgment interest was still in dispute. *See Printz*, 980 P.2d at 528–29.

■ Although not raised by the parties, we must also determine whether the appeal is moot under the related doctrine of voluntary satisfaction of judgment. *See, e.g., People ex rel. K.A.*, 155 P.3d 558, 560 (Colo.App. 2006) (noting that mootness is a doctrine that involves a court's subject matter jurisdiction and, as such, should be addressed by a court

even if not raised by the parties). Under this doctrine, an appeal is moot when a defending party voluntarily satisfies the judgment against him or otherwise complies with a court order in a manner that removes the controversy. *See, e.g., Fulenwider*, 798 P.2d at 427. In *Fulenwider*, we held that a challenge to the propriety of a district court's order of judicial dissolution of a Colorado corporation and appointment of a receiver was moot where the party seeking review voluntarily complied with the order and the corporation was already in the process of dissolution and winding up. *Id.* at 427.

In contrast, however, we have also held that, where a money judgment is satisfied through payment, such payment will not moot an appeal, unless, in connection with the payment, the parties agree that an appeal will not be sought.

> The general rule is that one against whom a judgment or decree for a sum of money has been rendered does not, *by voluntarily paying or satisfying it*, waive or lose his right to review it upon a writ of error or appeal *unless such payment or satisfaction was by way of compromise or with an agreement not to pursue an appeal or error proceeding.*

*Reserve Life Ins. Co. v. Frankfather*, 123 Colo. 77, 85, 225 P.2d 1035, 1039 (1950) (internal citations omitted) (emphasis in original). Payment of a money judgment does not moot an appeal, absent agreement that it do so, because "[i]n the event the judgment is reversed, the judgment debtor is entitled to complete restoration of his property or rights in accordance with the mandate of [the appellate court]." *Id.* at 88, 225 P.2d at 1040. Thus, while in *Fulenwider* the voluntary dissolution and winding up of a corporation mooted an appeal because the act of dissolution could not be undone, payment of a money judgment will not moot an appeal absent agreement to the contrary because the money can be restored to the defendant in the event of a judgment in its favor.

Because this case involves the payment of a money judgment, *Frankfather* controls. As there was no agreement that payment of the judgment in full would moot the appeal and, indeed, the parties manifestly agreed that such payment would not waive USAA's right to appeal the disputed judgment, USAA's payment of the disputed interest does not moot the appeal under the doctrine of voluntary satisfaction of judgment.

Having concluded that USAA's appeal is not moot and, therefore, that jurisdiction in this court is proper, we turn to the merits of the case.

## II. Calculation of Prejudgment Interest

We granted certiorari in this case to determine which of Colorado's two prejudgment interest statutes controls the calculation and timing of prejudgment interest awarded to an insured in a UIM case brought against his or her insurer to recover benefits arising out of an underlying tort: the "personal injury statute" or the "wrongful withholding statute." [9] USAA argues that its duty to pay UIM benefits arises out of its contractual obligation to Parker. Thus, because Parker seeks damages for USAA's breach of its contractual obligations to him, and because the "wrongful withholding statute," section 5–12–102, controls prejudgment interest in all cases except damages for personal injuries and where the parties have otherwise agreed to a rate of interest, prejudgment interest in this case accrues under section 5–12–102 from the time UIM benefits are wrongfully withheld.

We therefore turn to examine the text and legislative intent of sections 10–4–609, the UM/UIM statute, and 13–21–101(1) below, beginning with the UM/UIM statute.

---

9. A trial court's application of one statute rather than the other can substantially impact a plaintiff's award. The "personal injury statute" states that, when prejudgment interest is awarded thereunder, such interest accrues at a rate of nine percent per annum "from the date the action accrued." § 13–21–101(1). In contrast, the "wrongful withholding statute" provides that interest accrues at a rate of eight percent per annum "from the date of wrongful withholding." § 5–12–102(1). Parker contends that an application of the "wrongful withholding statute" to this case would obligate him to return approximately $56,000 to USAA.

**A. The UM/UIM Statute Requires that an Insured Recover the Same Measure of Prejudgment Interest in a Claim for Benefits Against his UM/UIM Insurer as in a Direct Action Against the Tortfeasor**

Enacted in 1979, the UM/UIM statute, section 10–4–609, is designed "to provide an insured with benefits to the extent necessary to recover for loss caused by a negligent and financially irresponsible motorist, subject to policy limits." *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo.1989). This coverage is designed to place a driver who is injured by an uninsured or underinsured motorist in the same position as if the uninsured or underinsured motorist had liability limits in amounts equal to the insured's coverage. *Id.* at 762; *see also McCord v. Affinity Ins. Group*, 13 P.3d 1224 (Colo.App. 2000); *Prudential Prop. & Cas. Ins. Co. v. LaRose*, 919 P.2d 915 (Colo.App.1996); *Leetz v. Amica Mut. Ins. Co.*, 839 P.2d 511 (Colo. App.1992). The statute implements this policy by prescribing the nature of the coverage insurers are required to offer their insureds. At the time of Parker's accident, the statute provided that uninsured motorist coverage "shall include coverage for *damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle.*" § 10–4–609(4), C.R.S. (2002) (emphasis added).[10] Similarly, section 10–4–609(5) provides that "the maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of: (a) [the difference between coverage and the amount received by any legally liable party] or (b) the *amount of damages sustained* but not recovered." (emphasis added).

Likewise, Parker's USAA policy tracks the language of the statutory mandate, reiterating his entitlement to the "amount of *damages* [the insured] is entitled to recover [up to the insured's policy limits]." (emphasis added).

The language of the UM/UIM statute indicates that its aim is to provide the insured a means to recover from the insurer all of the "damages" he or she is legally entitled to recover in an action against the tortfeasor up to the insured's policy limits. We have held that, for insurance purposes, "prejudgment interest is a form of damages. Based as it is on the compensation awarded for bodily injury, prejudgment interest arises out of bodily injury and therefore is comprehended within the bodily injury coverage of the policy and subject to its limit." *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 20–21 (Colo.1990).

In *Starke*, we held that an insurer was not liable for prejudgment interest in excess of its bodily injury policy limits. *Id.* at 18. The policy at issue in that case limited the insurer's liability to $100,000 for " 'all damages which the insured shall be legally obligated to pay because of . . . bodily injury sustained by any person.' " *Id.* at 16. We held that, because prejudgment interest is a component of compensatory damages, the insurer's liability for prejudgment interest was capped at $100,000 under the terms of the policy. *Id.* at 18. Because the insurer already paid its policy limits on the claim, it was not liable for additional prejudgment interest.[11] *Id.*

Because prejudgment interest is an element of damages, and because both the UM/UIM statute and USAA's policy require that UM/UIM coverage "include coverage for

---

**10.** The UM/UIM statute was amended by 2007 Colo. Sess. Laws.1921–23. The amendment added section (1)(c), which provides even more clearly that the coverage "shall cover the difference, if any, between the amount of the limits of legal liability coverage and the amount of *damages sustained,* excluding exemplary damages, up to the maximum amount of coverage obtained pursuant to this section." *Id.* at 1921.

**11.** We are aware that our interpretation of *Starke* is in tension with the court of appeal's understanding of that case enunciated in *Peterman*, 8 P.3d at 552. In *Peterman,* the court of appeals

confined *Starke's* holding that prejudgment interest is an element of damages and, therefore, prejudgment interest could not be awarded in excess of policy limits to cases where a liability insurer pays an award to a third party, and declined to read *Starke* as governing a UIM insurer's payment of benefits to an insured. Consequently, the *Peterman* court required a UIM insurer to pay prejudgment interest in excess of policy limits. To the extent that *Peterman* is inconsistent with the interpretation of *Starke* articulated above, it is overruled.

damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle," the UIM insurer must account for the prejudgment interest an innocent insured would have recovered against the tortfeasor had the tortfeasor obtained liability insurance in amounts equal to the insured's coverage.

■■■■ There is no dispute that, in a direct action against the tortfeasor, the "personal injury statute" governs an award of prejudgment interest. *See, e.g., id.* at 21 (applying the "personal injury statute" to a liability claim against an insurer). The "personal injury statute" requires payment of prejudgment interest at a rate of nine percent per annum from the date of the accident. § 13–21–101(1). Hence, under the UM/UIM statute, the damages the insured recovers from his or her UM/UIM insurer must include prejudgment interest calculated at a rate of nine percent per annum from the time of the accident, up to the limits of the insured's policy.

Thus, we conclude that the express language of the UM/UIM statute supports the application of the "personal injury statute," section 13–21–101(1), to the underlying tort in claims by an insured against his or her UM/UIM insurer to recover benefits for a covered injury.

This construction of the UM/UIM statute is consistent with our precedent, which has emphasized that the purpose of the UM/UIM statute is to provide Coloradans with the opportunity to "gain compensation [within policy limits] for loss due to the negligent conduct of non-insured motorists in the *same manner* as the insured would be compensated for loss due to the negligent conduct of *insured motorists.*" *Kral,* 784 P.2d at 762 (emphasis added); *see also Garceau v. Iowa Kemper Ins. Co.,* 859 P.2d 243, 246 (Colo. App.1993) (noting that "[t]his theme, requiring that a person injured by an uninsured motorist be compensated to the same extent as one injured by an insured motorist, has been followed consistently by the courts of this state," and collecting cases).

If the "wrongful withholding statute," section 5–12–102, applied to a claim against a

UM/UIM insurer for damages arising out of an insured's personal injury, then the insured would recover less in a UM/UIM claim against his insurer for benefits on the underlying tort than in a direct claim against a tortfeasor who is insured to the same extent as the injured plaintiff. Such a result puts the injured insured at a disadvantage solely because the tortfeasor was not sufficiently insured. This was precisely the harm the UM/UIM statute was enacted to remedy; the legislature intended that an injured insured recover "in the same manner" and "to the same extent" in either case. *Kral,* 784 P.2d at 763 (the legislative declaration of purpose prefacing the first legislation enacted by the General Assembly protecting persons injured by uninsured motorists under the Motor Vehicle Financial Responsibility Act, 1965 Colo. Sess. Laws 333, "demonstrates a legislative intent to permit insureds to protect themselves against loss, up to policy limits, resulting from the negligent conduct of financially irresponsible motorists."); *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 61 (Colo.1990) ("The purpose of the uninsured motorist coverage mandated by section 10–4–609 is to compensate an innocent insured for loss, subject to the insured's policy limits, caused by financially irresponsible motorists. The legislative intent is satisfied by coverage that compensates a person injured by an uninsured motorist to the same extent as one injured by a motorist who is insured in compliance with the law." (internal citations omitted)).

■■■■ Thus, the purpose of the UM/UIM statute is to prevent the measure of damages to which an injured insured is entitled from turning on the fortuity of whether the tortfeasor is insured.

**B. Because the "Personal Injury Statute" is Triggered by the Nature of the Damages Sought, the Statute Applies to Claims for Benefits Arising from Personal Injury, Irrespective of the Source of the Duty to Pay those Benefits**

Turning to the "personal injury statute," an analysis of its text establishes that a claim

against a UM/UIM insurer for benefits arising from the insured's personal injuries falls within its ambit. Although the USAA insurance policy issued to Parker is undoubtedly a contract, it is a contract to pay personal injury damages.[12] Thus, although Parker's right to recover benefits is contractual, the damages he seeks are damages for personal injury.

The "personal injury statute" makes clear that its focus is upon the nature of the damages sought by the plaintiff, rather than the nature of the defendant's duty to pay those damages.

> In *all* actions brought to recover *damages* for personal injuries sustained by any person resulting from or occasioned by the tort of any other person....

§ 13–21–101(1), C.R.S. (2008) (emphasis added). The language of the statute does not restrict its application to cases sounding in tort. Rather, it includes "*all* actions," whether in tort or contract, brought to "recover damages for personal injuries," where those injuries are "occasioned by the tort of *any* other person," whether that person is the defendant or not. Had the legislature intended to restrict the application of the "personal injury statute" to claims involving a defendant's breach of a tortious duty owed to the plaintiff, it would have been easy for it to do so. The General Assembly could have drafted the statute so that it applied only to "all tort actions," or "all actions brought against the tortfeasor." Instead, the legislature made the nature of damages the touchstone of whether the "personal injury stat-

ute" applies, and made the source or nature of a defendant's obligation to recompense the plaintiff for those personal injuries irrelevant to this analysis.

Thus, Colorado courts have held that a plaintiff may recover prejudgment interest under the "personal injury statute" in a suit against a tortfeasor's employer, even though the employer's obligation to pay arises from its relationship with the tortfeasor, rather than breach of a tortious duty owed directly to the plaintiff.[13] *See, e.g., Ochoa v. Vered,* 186 P.3d 107, 115–16 (Colo. App.2008) (upholding a doctor's vicarious liability for the negligence of his nurses based on the "captain of the ship" doctrine and calculating interest under the "personal injury statute"). Likewise, a plaintiff may recover prejudgment interest under the "personal injury statute" when he seeks damages for personal injuries, even though the defendant's obligation to pay such damages arises from contract and not tort.

Therefore, the language of the "personal injury statute" also supports its application to claims by insureds against their UM/UIM carriers to recover benefits on the underlying tort because it is the nature of the damages sought by the plaintiff, rather than the source of the insurer's obligation to compensate the insured, which triggers the application of that statute.

### Conclusion

For the foregoing reasons, the court of appeals' judgment is affirmed. We remand

---

**12.** As mentioned above, the fact that USAA is obligated to pay damages for personal injury is borne out by the language of both the UM/UIM statute and the policy. The statute provides that "coverage shall include coverage for *damage* for bodily injury or death that an insured is *legally entitled to collect* from the driver of an underinsured motor vehicle." § 10–4–609. The policy tracks the language of the statute: "Uninsured Motorist Bodily Injury (UMBI) ... pays for injury caused by a motorist with liability limits less than your UM limits and less than the *amount of damages you are entitled to recover.*" (emphasis added).

**13.** Although an action against an employer for the torts of its employee still sounds in tort, and not in contract, its obligation to compensate the plaintiff for the torts of its employee arises from

the doctrine of respondeat superior, rather than from the breach of a duty of care owed to the plaintiff. *See* Restatement (Third) of Agency § 2.04 cmt. b (2006). USAA has essentially argued that, in order to recover under the "personal injury statute," a defendant must have breached some type of tortious duty owed to the plaintiff. The example from agency law indicates that this is not the case, for, although such an action is brought in tort, no duty is owed by the defendant employer to the plaintiff. Instead, the employer is essentially a proxy for its employee. *Id.* Thus, not even the existence and breach of a duty running from defendant to plaintiff, much less the nature of such a duty, is relevant to a determination of whether the "personal injury statute" applies.

this case to the court of appeals to be returned to the trial court with directions to enter judgment consistent with this opinion.

Justice COATS dissents.

Justice EID dissents.

Justice COATS, dissenting.

Although the majority opinion appears to involve little more than the interpretation of a statute, which can be amended by future legislative action, and the imposition of a slightly higher rate of prejudgment interest on certain damage awards against insurance companies, I believe its reasoning to be flawed and its ramifications likely to be more problematic than appears at first blush. I therefore respectfully dissent and briefly note some of my concerns.

Through a series of logical equivalences, the majority purports to demonstrate that an award against an insurer for underinsured motorist coverage is actually an award of damages for personal injuries. It therefore concludes that prejudgment interest must be calculated according to the statutory provisions governing "actions brought to recover damages for personal injuries" rather than the statutory provisions for interest on moneys due but unpaid before judgment enters. While I object to the majority's characterization of the key statutory language and our prior constructions of it in a number of regards, I think the force of the majority's argument is primarily undercut by its use of the term "damages" to mean different things, at different times.

"Damages" is usually used to denote an award of compensation for loss or injury, but on occasion it may be used less precisely to refer to the "damage" or injury itself.[1] When section 10–4–609, C.R.S. (2008), describes the obligation of insurance companies to make available uninsured or underinsured motorist coverage for bodily injury in terms of the "amount of damages sustained," it clearly uses the term in the latter sense. By

contrast, when section 13–21–101, C.R.S. (2008), refers to "an action brought to recover damages for personal injuries sustained by any person," it just as clearly intends the former.

Section 10–4–609 defines the particular kind of injuries, or damage, for which insurers must make underinsured motorist coverage available. Even then, the statute does not impose a duty on insurers to provide coverage for bodily injury caused by a tortfeasor but only to provide coverage for that bodily injury for which the tortfeasor has not himself provided liability coverage. Unlike liability coverage, underinsured motorist coverage does not make the insurer vicariously liable for bodily injury caused by its insured; it simply obligates the insurer to cover the cost of injuries suffered by its insured for which the liable driver has failed to provide coverage. Section 10–4–609 uses the term "damages," therefore, in reference to the insured party's injuries sustained at the hands of an uninsured or underinsured tortfeasor.

By contrast, section 13–21–101 uses the term to describe the particular kind of legal actions to which its formulae for calculating interest apply. The statute itself indicates that its special interest formulae apply only in actions seeking damage awards for injuries caused by tort, not for any action seeking a recovery that is in some way related to or measured by the amount of damage caused by tortious conduct. On its face, this does not seem to be a particularly debatable proposition, and in the past we have simply characterized the statute as applying to "personal injury money judgments." *See Rodriguez v. Schutt,* 914 P.2d 921 (Colo.1996). The statute is directed at personal injury tort actions and cannot reasonably be expanded to include actions for breach of contract, whenever the contract obligates the defendant to insure the plaintiff against injury for which his tortfeasor has not adequately provided liability coverage.

1. *See, e.g.,* Charles T. McCormick, *McCormick on Damages* 2 fn.1 (1935) ("It is well to notice at the outset that the term 'damage' is usually employed by lawyers and judges to mean the loss or injury from which the claim is asserted. 'Damages,' on the other hand, while sometimes used in the same sense, is more usually and conveniently limited to the meaning of the money award given as compensation for the loss.").

Nor do I believe our holding in *Allstate Insurance Co. v. Starke*, 797 P.2d 14 (Colo. 1990), suggests (much less requires) a different interpretation. There we determined that an insurance contract providing liability coverage for bodily injury caused to someone else by the insurer's insured should be construed to include prejudgment interest on personal injury damages, for which the insured is also liable by statute. Rather than characterizing prejudgment interest as an element of, or included within, personal injury damages, we carefully characterized prejudgment interest as "a form of damages," which "arises out of bodily injury and therefore is comprehended within the bodily injury coverage of the policy and subject to its limit." *Id.* at 20–21. If our holding there could be considered applicable to underinsured motorist coverage at all, the analogy would be that the contracted-for coverage must comprehend any uninsured prejudgment interest for which the tortfeasor would be liable, along with the uninsured personal injury damages for which he is liable. *Allstate* implies absolutely nothing about interest on a money judgment against an insurer for breaching its insurance contract.

Finally I must briefly comment on the references by both the trial court and majority to the "plain language" of section 13–21–101, and the majority's approval of the trial court's order granting prejudgment interest "from the date of the accident." Probably the only thing about the language of this statute that might be considered plain or clear is its self-limitation to actions for personal injury money judgments. If the provisions of the statute, as originally adopted by the legislature, governing the time period for which interest should be calculated (and over which it should be compounded), were not sufficiently confusing, the current version of the statute, following the severance of some words and the addition of others by this court, is facially indecipherable.[2] *See Rodriguez*, 914 P.2d at 929; *see also Sperry v. Field*, 186 P.3d 133 (Colo.App.2008).

As we noted in *Rodriguez*, the legislature's 1982 rewrite of the statute removed any differences between the applicable rates of prejudgment and postjudgment interest on personal injury judgments altogether. *See* Act of March 25, 1982, ch. 39, 1982 Colo. Laws 227. Although this court reestablished the distinction to overcome certain equal protection concerns, and simultaneously made clear that the rate of nine percent per annum would apply to prejudgment interest on all (and postjudgment interest on unappealed) personal injury money judgments, it left unclear the period for which such interest should be ordered. On its face, section 13–21–101(1) permits a plaintiff (after 1979) to *claim, in his complaint,* interest from the date the action accrues, but orders calculation of interest from the date of accrual only on appealed judgments, and only then at a market rate based on the existing discount rate. For other personal injury actions filed on or after July 1, 1975, the statutory language orders calculation at a rate of nine percent per annum, at least arguably from the date the action is filed, with annual compounding similarly computed from that date.

While un-excised language requiring postjudgment interest to be calculated "from the date the action accrued" and prejudgment interest to be calculated "to the date of satisfying the judgment" cannot possibly be squared with our holding in *Schutt*, and appears to have been left solely through inadvertence, *see Sperry*, 186 P.3d at 140, even allowing for this mistake, the redacted statute arguably continues to provide for an order of prejudgment interest for actions filed on or after July 1, 1975, at a nine percent interest rate calculated from the date the action is filed. The majority's approval of the trial court's calculation of interest "from the date of the accident" simply reflects the fact that a separate challenge to the period of calculation was not expressly mounted. As the majority makes clear, its opinion does not reflect any determination that calculation of interest from that date is ordered or even sanctioned by the statute.

---

2. To add to the confusion, the 2008 Colorado Revised Statutes, certified by the Committee on Legal Services and printed by Lexis/Nexis, contains an "Editor's Note" with a clearly mistaken description of the statutory language excised by this court in *Rodriguez*.

I note one other (perhaps unintended but nevertheless inexorable) consequence of the majority's decision to categorize actions to recover UM/UIM coverage as "actions brought to recover damages for personal injuries." Although prejudgment interest must therefore be calculated at nine percent per annum, rather than at the eight percent rate prescribed for other obligations, *see* § 5–12–102, C.R.S. (2008), postjudgment interest must similarly be calculated according to the statutory provisions governing "actions brought to recover damages for personal injuries." Unlike postjudgment interest on other kinds of judgments, which also varies with the discount rate but is not permitted under any circumstances to fall below eight percent, *see* §§ 5–12–102(4) and –106(2)(b), we expressly held in *Schutt* that section 13–21–101 does not establish a floor on the interest rate applicable to personal injury money judgments. 914 P.2d at 924.

I do not, of course, suggest sleight of hand by the majority, but only its failure to note (and perhaps even to notice) the subtle, but I think meaningful, differences in its usage of the term "damages." Although the majority's interpretation may work to the advantage of the insured in this particular case, where the judgment has already been paid, I do not believe that will always or even usually be the case. In fact, the policy justifications offered in support of our statutory scheme appear to reflect the realities so imperfectly that only a legislative fix seems capable of returning the assessment of pre and postjudgment interest to a rational footing.

Because I disagree, however, with the majority's construction of the applicable statutes in this case, I respectfully dissent.

Justice EID, dissenting.

I respectfully dissent from the majority's opinion for many of the reasons identified by Justice Coats. In my view, Parker's action against USAA for recovery of underinsured motorist benefits is not an "actio[n] brought to recover damages for personal injuries" under section 13–21–101(1), C.R.S. (2008). The nature of the injury stated in Parker's claim against USAA is not a "personal inju-

ry." Instead, he alleges a purely monetary injury stemming from USAA's failure to pay underinsured motorist ("UIM") benefits. Therefore, prejudgment interest on the claim is not calculated under section 13–21–101(1), as the majority holds, but rather under section 5–12–102(1)(a), C.R.S. (2008), which applies to "money ... wrongfully withheld." The fact that our UIM statute requires insurers to provide *coverage* for "damage for bodily injury," § 10–4–609(4), C.R.S. (2008), does not transform a claim against an insurer to recover the benefits of that coverage into an action for "personal injury." Maj. op. at 358–59. Nor does the fact that the legislature may have intended through its UIM legislation to place a driver who has been injured by an underinsured motorist in the same position as if the underinsured motorist had adequate insurance coverage, maj. op. at 359, change the language of section 13–21–101(1), which only applies to actions to recover damages for personal injury. Because, in my view, this is not such an action, I respectfully dissent.